## KIRBY v. MARTINDALE.

1. A complaint alleging that defendant printed in his legal directory a certain libelous statement and publication concerning plaintiff, the "substance and effect" of which was that plaintiff was a second-rate lawyer, was demurrable for failure to set out the alleged libel in hæc verba.

2. A complaint alleged that defendant willfully and maliciously, and without justifiable cause, printed and published a certain libelous publication in that plaintiff's name, age, and the year of his admission to the bar were published in defendant's directory without a rating, and that by reason of the premises plaintiff was greatly injured in his professional and business standing, was insufficient for failure to allege that the absence of any rating meant anything derogatory to plaintiff's personal or professional character or ability.

(Opinion filed May 31, 1905.)

Appeal from circuit court, Minnehaha county; Hon. JOSEPH W. JONES, Judge.

Action by Joe Kirby against J. B. Martindale. From an order sustaining a demurrer to the complaint, plaintiff appeals. Affirmed.

*S. H. Wright* and *Joe Kirby*, for appellant.

*Bailey & Voorhees*, for respondent.

CORSON, P. J. This is an appeal from an order sustaining a demurrer to the plaintiff's complaint. The demurrer was interposed on the ground that the complaint did not state facts sufficient to constitute a cause of action. The material parts of the complaint are as follows: "That the plaintiff is, and has been at all the times stated in the complaint, a duly licensed attorney and counselor at law, entitled to practice in all the courts of the state; that the plaintiff now is, and has been at all of the times stated, a lawyer of first-class standing professionally, and worth not less than $100,000; that defendant is now, and has for more than 25 years been, the publisher and distributor of a certain printed book known and described as 'Martindale's American Law Directory,' which purports and claims to give the names and professional and financial standing of all the lawyers in the United States and in other countries, and as such it has a large circulation, many thousand copies of said book being circulated and distributed at or about the commencement of each year all over the United States and in foreign countries, and that lawyers and others all over the world where said publication circulates rely upon its ratings of lawyers professionally and financially in selecting correspondents to whom to send legal business; that in the 1903 issue of his said law directory the defendant wrongfully, willfully

injuriously, maliciously, and without any justifiable cause, printed and published, and sent out to his thousands of sub-scribers all over the United States and foreign countries, of, about, concerning, and touching this plaintiff in his profes-sional standing a certain libelous statement and publication, the substance and effect of which was that this plaintiff was a second-rate lawyer, of only fair standing, and worth only from $10,000 to $20,000, when in truth and in fact plaintiff was and is a first-class lawyer of first-class standing, and worth at least $100,000; and that in the 1904 issue of said directory, which was printed, issued, and published by the defendant, and sent out all over the United States and foreign countries, the de-fendant, with full knowledge that plaintiff was a first-class lawyer and of first-class standing and worth at least $100,000, published plaintiff's name as one of the members of the bar of Sioux Falls, S. D., but willfully, wrongfully, maliciously, and in a libelous manner, and with intent to injure plaintiff in his said business, failed and refused to give plaintiff any rating or standing whatever, simply publishing his name, age, and year of admission, although every other lawyer of said city, save and except one (there being 62 lawyers therein), was given a rating and standing; and that by reason of the premises this plaintiff has been greatly injured in his said professional stand-ing and business and has sustained damages in the sum of $2,000, no part of which has been paid. Wherefore plaintiff demands judgment against this defendant for the said sum of $2,000, and for costs and disbursements of said action.''

Respondent insists, in support of the ruling of the court in sustaining the demurrer, that the cause of action arising upon the 1903 publication fails to set forth the alleged libel,

but simply states the "substance and effect" of the same, and that no libel is shown to have been published as to the appellant by the 1904 publication of the American Law Directory. It will be observed that the plaintiff in his complaint states "that in the 1903 issue of his said law directory the defendant * * * printed and published, and sent out to his thousands of subscribers all over the United States, * * * a certain libelous statement and publication, the substance and effect of which was that this plaintiff was a second-rate lawyer," but omits to set out in hæc verba the libel complained of. The rule seems to be well settled that in a complaint for libel the libelous publication must be set out in the complaint, and that it is not sufficient to set out therein the publication in its "substance and effect." In Bradstreet v. Gill, 72 Tex. 115, 9 S. W. 753, 2 L. R. A. 405, the Supreme Court of Texas, speaking upon this subject, says: "The petition does not set out in hæc verba the very language of the libel, but pretends to give its substance and meaning. * * * A libel suit is based on language, or its equivalent. The complaint in a libel suit should put the court in possession of the libelous matter published— the language used, with such innuendoes as are necessary to explain what was meant by the language, and to whom it applied—so as to enable the court to determine whether the words are actionable. In this case the complaint attempts to give the meaning of the words or libel only without stating what the libel was. If the libel consisted in reporting plaintiff's standing as a merchant, 'in blank.' the complaint should have informed the court and the defendant of the fact, with such explanation as to what was meant by the report as were necessary to show that the report was injurious and defama-

tory. * * * It is not sufficient, in this kind of a suit, to state the substance of the language used, or its meaning. We believe the general demurrer ought to have been sustained." Blessing v. Davis, 24 Wend. 100; Commonwealth v. Wright, 1 Cush. 46. It is quite clear, therefore, that the complaint as to the alleged libel published in 1903 was insufficient, and the demurrer was properly sustained to that cause of action or clause of the complaint.

It is further contended by the respondent in support of its demurrer that there is no allegation in the complaint that the absence of any rating of the plaintiff as a lawyer in the American Law Directory means anything derogatory to his personal or professional character or ability; that there is a total absence in the complaint of any allegation that a libelous meaning attaches to the failure to give to an attorney a rating either as to his qualifications or to his financial standing; and there is also a total absence of any innuendo representing the meaning of the failure to give appellant a rating in the 1904 edition of the directory. It will be observed from a perusal of the complaint that there is no allegation therein that the failure of the defendant to give an attorney a rating was understood by defendant's subscribers as affecting his reputation as an attorney or his financial ability.

The appellant, in support of his contention that the complaint was sufficient, seems to rely largely upon the case of Bradstreet v. Gill, supra, but in that case the plaintiff alleged the meaning and effect of the omission to properly rate him, and the manner in which it was understood by the subscribers to the publication made by the Bradstreet Company. Such allegations are necessary in order to raise the issue as to the

meaning and effect of the omission to properly rate him as a lawyer and financially. A denial of the allegations in that regard would put in issue such allegation, and thereby raise the proper issue in the case, namely, what was the understanding of the subscribers of defendant's publication as to the omission to properly rate the plaintiff professionally and financially? It is not claimed by the plaintiff in his complaint that the defendant was under contractual relations with him, or that it owed him any duty to properly rate him professionally or financially. It is true the plaintiff alleges that the defendant wrongfully, willfully, injuriously, and maliciously, and with no justifiable cause, printed and published and sent out to its thousands of subscribers a certain libelous publication, simply publishing his name, age, and year of his admission, although every other lawyer of said city, save one, was given a rating and standing, and that by reason of the premises the plaintiff has been greatly injured in his professional and business standing; but these statements do not supply the necessary allegations omitted. The court could not determine from this statement that the omission to give the plaintiff a rating in the defendant's publication would affect him injuriously, and without such an allegation the complaint was clearly insufficient. Similar allegations to those indicated were contained in the Bradstreet Company's case, and the court discusses at length in the opinion in that case the admissibility of the evidence offered to sustain these allegations.

While holding the complaint insufficient, and the demurrer properly sustained thereto upon the grounds stated, we do not wish to be understood as holding that the complaint would

have been good even if these omitted allegations had been contained therein, and upon that question we express no opinion at this time, it being sufficient for the purpose of this decision to pass upon the complaint as it is now presented.

The order of the circuit court sustaining the demurrer is affirmed.