BLANTON M. HARRISS v. THE METROPOLIS COMPANY.

160 So. 205.
Division B.
Opinion Filed March 20, 1935.

*Evan Evans,* for Plaintiff in Error;
*Sabel & Reinstine,* for Defendant in Error.

PER CURIAM.—The declaration, containing three counts, in effect alleges:

"Comes now the plaintiff in the above entitled cause, Blanton M. Harriss, by his attorney, and sues The Metropolis Company, a corporation, defendant, for this, to-wit:

"1. That at all times hereinafter mentioned the defendant was publisher of a newspaper in the city of Jacksonville, Duval County, Florida, called 'Jacksonville Journal'; that for many years prior to the committing by the defendant of the grievance hereinafter alleged, plaintiff has been employed in newspaper work in the city of Jacksonville, Duval County, Florida, and had been honestly acquiring great gains in his said business, and had so conducted himself in his said business as to deservedly obtain the good opinion and credit of his neighbors and other good and worthy citizens of said community to whom he was in anywise known.

"Yet the defendant, well knowing the premises and maliciously intending to injure the plaintiff in his said business and otherwise, * * * falsely and maliciously published in said newspaper and of and concerning the plaintiff in his said employment or business, the following words, that is to say:

" 'The Shameful Facts.

" 'Bill Harriss (meaning thereby the plaintiff who was commonly known by said name), for 21 years employed on the morning paper (meaning thereby The Florida Times-Union, a newspaper published in the city of Jacksonville, Florida), was fired Saturday by the three railroad attorneys who are directors of that paper.

" 'The Times Union was exposed Saturday by The Journal in suppressing a story about the canal—a favorable story. That railroad-owned newspaper was completely shown up by the facts. There was no escape. It stood before the people indicted and convicted of betraying this city's best interests.

" 'The directors met—three railroad attorneys. They assembled Saturday afternoon.

" 'Final result: Bill Harriss was fired. He was the one who had left out the story. In leaving it out he was merely following Times-Union policy, as he had done during all those 21 years. He knew what was expected of him, and he did it.

" 'Bill Harriss is without a job now, anyhow, and probably the three directors feel cleansed of any stain that was upon the name of the Times-Union. .

" 'It will be difficult for Harriss to get a job in his chosen profession. Working on the Times-Union is not much like working on other newspapers.

" 'In his 21 years on that paper Bill had thrown out many a story that the railroads didn't like—stories that were legitimate news on any other paper. * * *

"That more than five days before the institution of this action the plaintiff served notice in writing on defendant, specifying the articles and the statements therein which he alleges to be false and defamatory, but that the defendant did not within ten days, or any other time, after the service of said notice publish a correction, apology or retraction of said false and defamatory matter.

"Wherefore plaintiff brings this suit and claims $25,000.00 damages of defendant.

"2. * * * plaintiff alleges all the allegations of the foregoing count, and further alleges that the defendant willfully, wantonly and maliciously published such false and defamatory matter over the protest of plaintiff made to defendant prior to the publication thereof.

"That by reason of the premises plaintiff has been brought into public scandal and disgrace in his said profession, and divers of his neighbors and other good and worthy citizens of said community have been led to believe that plaintiff

did not discharge the duties of his said profession with integrity and propriety of conduct. * * *

"3. * * * that just previously to the publication by defendant of the false and defamatory matter hereinafter alleged, plaintiff's employment as night editor of the Florida Times-Union, another newspaper published in said city of Jacksonville, had been terminated, and plaintiff was then in search of other employment in his said profession.

"That the defendant, maliciously intending to injure the plaintiff in his said profession and otherwise, * * * falsely and maliciously published in defendant's said newspaper and of and concerning the plaintiff in his said profession, the following words, that is to say:

" 'It will be difficult for Harriss to get a job in his chosen profession. Working on the Times-Union is not much like working on other newspapers. In his 21 years on that paper Bill (meaning the plaintiff) had thrown out many a story that the railroads didn't like—stories that were legitimate news in any other paper.'

"Wherefore, plaintiff brings this suit and claims $25,-000.00 damages of defendant."

A demurrer to the declaration was sustained and the plaintiff declining to amend, judgment for the defendant on the demurrer was rendered and plaintiff took writ of error.

"In libel any language published of a person that tends to degrade him, or to bring him into ill repute, or to destroy the confidence of his neighbors in his integrity, or to cause other like injury, is actionable *per se*. Montgomery v. Knox, 23 Fla. 595, 3 So. 211.

"Where a publication is false and not privileged, and is such that its natural and proximate consequence necessarily causes injury to a person in his personal, social, official or business relations of life, wrong and injury are

presumed or implied and such publication is actionable *per se.* Where a publication is not privileged and is not actionable *per se* because the publication as ordinarily understood will not naturally and necessarily cause injury, damages may* be recovered upon proper allegations and proofs for such special injury as is the natural and proximate though not necessary consequence of the wrongful publication.

"Where injury naturally and proximately results from a wrongful publication, * * * damages may be recovered for such injury. If the publication is not actionable *per se,* i. e. naturally and necessarily injurious, special damages should be alleged.

"Where injurious consequences do not result from the tortious act by implication of law as where they naturally and necessarily follow the act, they must be specially alleged, and such allegations should be confined to damages for injurious consequences that reasonably, naturally and proximately result from the tort." Briggs v. Brown, 55 Fla. 517, 46 So. 325.

The publications as alleged in the declaration do not constitute libel *per se,* since as ordinarily understood they do not naturally and necessarily tend to degrade or to expose a person to distrust, hatred, contempt, ridicule or obloquy, or to cause him to be avoided or tend to injure him in his occupation, business or employment.

It is alleged that the publications were falsely and maliciously made with malicious intent to injure the plaintiff in his business and otherwise; but as the publications are not libels *per se,* and as there are no allegations of injuries proximately resulting from the publications, the declaration is demurrable.

It is alleged:

"That by reason of the premises plaintiff has been brought into public scandal and disgrace in his said profession, and divers of his neighbors and other good and worthy citizens of said community have been led to believe that plaintiff did not discharge the duties of his said profession with integrity and propriety of conduct."

But as the publications as alleged do not *naturally* and *necessarily* tend to lead good and worthy citizens to believe that plaintiff did not discharge the duties of his profession with integrity and propriety of conduct, the allegation is insufficient, there being no allegation of actual injury resulting proximately from the publication.

It is alleged that just previously to the publication set out in the third count, plaintiff's employment by another newspaper had been terminated and plaintiff was then in search of other employment in his profession. The publication prophesies that "it will be difficult for Harris to get a job in his chosen profession"; but is not alleged that because of such publication as alleged it was difficult for plaintiff to get a job in his chosen profession, or that he was injured by the publication which is not libelous *per se*.

No injury to plaintiff in his profession or otherwise is alleged; and the general *ad damnum* clause is not sufficient as a showing of and a claim for damages, when the publication as charged is not a libel *per se* even though malice be alleged.

Affirmed.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.