[File No. 6387.]

S. E. ELLSWORTH, Respondent, v. MARTINDALE-HUBBELL LAW DIRECTORY, INC., a Corporation, Appellant.

(268 N. W. 400.)

Opinion filed March 25, 1936. On Rehearing July 15, 1936.

*Nilles, Oehlert & Nilles,* and *Richardson, Thorp & Wattam,* for appellant.

*Knauf & Knauf,* for respondent.

MORRIS, J. This is an action for libel and comes to this court upon appeal from an order of the District Court overruling a demurrer to the complaint. The demurrer sets up that the complaint fails to state facts sufficient to constitute a cause of action.

The complaint alleges the corporate character of the defendant; that the defendant has for a period of forty years or more been engaged in the business of preparing, publishing, and circulating throughout the United States and Canada each year, a book known as "Martindale's American Law Directory" in which the defendant purports to rate all practicing lawyers with regard to their ability, character, professional and financial standing; that during the years 1927, 1928, 1929, and 1930, and for many years prior thereto, the ratings were indicated by the use of certain letters and figures, the meanings of which were disclosed by a "private key" printed and inserted by the

defendant in each copy of the directory; that: "The subscriber to, owner of and any person consulting said Directory for business purposes, was advised that the meaning intended to be conveyed by the use of the letter "a" after the name of a lawyer appearing upon the lists contained therein, was that his legal ability was "very high" or first class; and by the use of the letter "b" that his legal ability was "high" or second class. It was further stated "no arbitrary rule for determining legal ability can be formulated. Ratings are based upon the standard of ability for the place where the lawyer practices. Age, practical experience, class of practice, with other necessary qualifications are considered; reports are obtained through various channels and we endeavor to reflect the consensus of reliable opinion." It was further stated in said "Private Key," that in rating upon the point designated as "Recommendations," the use of the letter "v" meant "very high" or first class; and the use of the letter "w," "good" or second class. That in rating, "Financial Worth," the use of the figure 5 meant a worth of from $10,000 to $20,000; and of the figure 6, a worth of from $5,000 to $10,000. That in the rating for "Promptness in Paying Bills," the use of the letter "g" meant "good," or of the highest class; and the use of the letter "f" meant fair or of an inferior or lower class. That the interpretation hereinbefore set forth of the use of said letters and figures placed opposite to the names of lawyers listed in said book, was by the use of said "Private Key" therein inserted, did make clear to all persons consulting and using the same the significance attached to each and all of said letters and figures so used as symbols as intended by Defendant; and was by all such persons so using said volume for reference and the business public generally recognized, received and accepted as the rating, according to the definition of said "Private Key," intended to be given to each of said names, by the Defendant as publisher of said Directory."

The complaint further sets forth plaintiff's admission to practice in the courts of North Dakota and various Federal Courts, the territorial extent of his practice, his good reputation as to legal ability, skill and efficiency, his high standing among the members of the bar in his locality for character, integrity, experience, and trustworthiness; that in 1928 and 1929 the plaintiff was worth between $15,000 and $20,000; that he has been reasonably prompt in the payment of his bills and

has enjoyed a good credit in business. We quote the final paragraphs of the complaint.

"And plaintiff further alleges that in September 1927, and for a period of twenty years and more prior thereto his qualifications as to legal ability, recommendations, financial worth, credit in business, promptness in paying bills, and upon all points upon which ratings are given in said Directory were well known to said Defendant. That in the year 1907, the name of Plaintiff was printed in the Directory published in that year in Boldface type, followed by the rating "a v 5 fi." In the "Private Key" inserted in said 1907 edition of said Directory it is stated that the letters and figure "a v 5" have the same meaning as hereinbefore given; but that the meaning of the letters "fi" there used is that the rating for promptness in paying bills is "good." That in the 1908 edition of said Directory the name of Plaintiff was again printed in Boldface type with a rating "a v 5 fi" as in 1907; with the same explanation in the "Private Key" inserted of the significance of the letters and figure used. That in the 1914 edition of said Directory the name of Plaintiff was again printed in Bold Faced type and followed by the rating "a v f g," the "Private Key" inserted in this edition explaining that as in subsequent editions of said Directory the significance of the letter "g" as used was "Rating for Promptness in paying Bills"—"Good." That Plaintiff believes that in all the editions of said Martindale's American Law Directory published each year from and before the year 1907 to the year 1926 the name of Plaintiff was published by Defendant with a rating of "a v 5 g" or its equivalent indicating that Plaintiff's legal ability was "very good or very high;" his recommendations "very high;" his promptness in paying bills "good;" and that in all of said particulars his reputation and character was first class and equal or superior to that of any lawyer practicing in the City of Jamestown or in said locality generally; and that from the ratings given as aforesaid in said editions of its Directory, Defendant well knew from the investigations made within the State of North Dakota and in the localities in which Plaintiff resided and practiced, by the agents appointed and authorized by Defendant for that express purpose and from the ratings given and reported to Defendant by said agents that Plaintiff was by his qualifications upon

all points in which said ratings were made and given, entitled and qualified to be rated as first class upon all of said points.

"And plaintiff further alleges that for many years it has been the usual practice and custom of Defendant to issue an edition of said Martindale's American Law Directory each year, and to solicit subscriptions for, publish, circulate and distribute each of such editions in the manner hereinbefore set forth. That each year the ratings of the lawyers listed therein are made by said agents as aforesaid during the months of July and August and the matter to be published therein edited, arranged and printed by Defendant; and the volume published and placed in the hands of subscribers in January of the year following as the edition of said Directory for that year. That in the latter part of the year 1927, Defendant, being fully advised and well knowing as hereinbefore set forth, the rating for legal ability, recommendations and promptness in paying bills to which Plaintiff was entitled and that such rating was first class and equal or superior to that of any lawyer practicing in the City of Jamestown and its locality, wilfully, wrongfully, maliciously and in a ·libellous manner, with intent to defame, derogate and injure professionally in character, reputation and business, and without any justifiable excuse therefor, printed and caused to be printed in the 1928 edition of said Directory the name of Plaintiff and cause to be subjoined thereto a so-called rating in letters and figures as follows, to wit "b w 5 f" which rating was by the interpretation of a "Private Key" inserted by Defendant in and made a part of said 1928 edition of said Directory, declared and intended to mean that Plaintiff located as he was in the City of Jamestown, was a lawyer of second rate legal ability, that his professional character and reputation, skill, methods of practice and integrity were second class, and that his rating for promptness in paying bills and general credit were only "fair" or inferior to that of many other lawyers practicing in said locality. That in said 1928 edition of said Directory seven other practicing lawyers, resident in the same locality as Plaintiff were rated by Defendant "A v g," intending meaning thereby to falsely and libellously announce to the public, that said lawyers were relatively and by a consensus of opinion of the community, of a higher class in legal ability, financial standing and recommendations in every point mentioned, to Plaintiff. That said ·1928 edition of said Martindale's

American Law Directory, containing the scurrilous and libellous rating of Plaintiff was in January 1928, printed, published and sold to purchasers and by it circulated and distributed to all parts of the United States and Canada; and that lawyers and business and professional persons generally within said limits referring to or consulting said Directory gave to the symbolic letters and figures therein inserted opposite to the name of Plaintiff the significance, interpretation and meaning intended to be given by Defendant in the use of its "Private Key." That by means of the distribution of many thousands of Volumes of said 1928 edition, through the mails, express and other methods of transportation, the false, untrue, wrongful and malicious ratings of Plaintiff were brought to the notice and knowledge of lawyers and business people generally over and within a vast territory to the great derogation of Plaintiff's professional and business standing and to his great loss and injury.

"And plaintiff further alleges that after the printing and publishing by Defendant in said 1928 edition of Martindale's American Law Directory of the false and untrue ratings as to legal ability, recommendations, general credit and promptness in paying bills; and on or about February 20, 1928, Plaintiff caused to be delivered at the principal business office of Defendant at the City of New York and to be placed in the hands of Defendant's officers and managers a letter in which he set forth in detail the former dealings of Plaintiff with Defendant, the facts in reference to the ratings given to Plaintiff in the yearly editions of said Martindale's American Law Directory for a period of twenty years or more; and to the fact that the rating inserted in said 1928 edition of the Directory was incorrect, false, untrue, libellous and defamatory. In said letter Plaintiff gave a history of his professional life, work and standing in the locality in which he practiced; and offered to substantiate to the satisfaction of Defendant and demonstrate to it a rating for professional ability and recommendations, equivalent to that of any lawyer practicing in said locality. He demanded in said letter that said false, untrue and defamatory rating be at once corrected and discontinued; and that if rated at all by Defendant, that he be rated fairly and reasonably in accord with his professional ability and recommendations. That Defendant disregarded and wholly failed to comply with Plaintiff's reasonable requests and demands and mali-

ciously, vindictively for personal profit and with intent to oppress Plaintiff and to injure him in his reputation and business, continued such publication and to spread and circulate said defamatory ratings wherever possible; and failed, refused and made no attempt whatever to retract, modify or correct the same.

"And plaintiff further alleges that on or about January A. D. 1929, the said Defendant, having prepared during the latter part of the year 1928 a full list of lawyers and members of the Bar practicing in the United States and Canada; and by means of agents and representatives sent to the State of North Dakota and other states for the purpose of investigating the relative standing upon the points hereinbefore enumerated, of all attorneys practicing therein and making and determining the rating to which each of such lawyers were entitled according to its plan and method as hereinbefore outlined and defined, caused to be inserted and printed in a volume of Martindale's American Law Directory, entitled and denominated as the 1929 Edition of said publication such list of names with attached ratings; and solely for its pecuniary advantage and profit, sold and caused to be distributed and circulated to subscribers in and throughout the United States and Canada more than 12,000 copies of said book. That in said 1929 Edition said Defendant caused the so-called "rating" in symbolic letters and figures placed opposite to the name of Plaintiff in its lists of attorneys to be discontinued; and after his name, upon its lists, inserted only the year of his birth and date of admission to the Bar and placed only four dashes or blank spaces, to wit: — — — —. That in the lists of said 1929 Edition of Martindale's American Law Directory for the City of Jamestown and locality were inserted the names of fifteen resident and practicing lawyers, all of whom were "rated" by the use of letters and figures. In its so-called "Confidential Key," inserted in said 1929 Edition of said Directory Defendant caused to be stated that "Absence of rating characters . . . may mean that we had 'no report' or satisfactory data was not obtainable." That said statement so far as the same related to the rating of Plaintiff by blank spaces on said volume was absolutely false and untrue, as Defendant for a period of 25 or more years prior to that time was supplied by its investigating agents with full and complete information as to the reputation and relative standing of Plaintiff among the lawyers of that locality and the

rating in ability, recommendations, estimated worth and promptness in paying bills to which he was entitled according to the system adopted, outlined, published and advertised by Defendant. That the purpose and intention of Defendant in thus placing opposite to the name of Plaintiff in the lists of its 1929 Edition, blank spaces instead of its rating characters was to publish to the public generally and particularly to the subscribers and purchasers of its Directory, that according to a "consensus of reliable opinion" in the locality in which Plaintiff resides and practices, that his character and reputation for legal ability, personality, skill, integrity and other recommendations was of a degree so low and relatively inferior to that of all other lawyers practicing in that locality, that he was not entitled to a "rating" under the system employed for the purpose by Defendant; that his financial worth was entirely negligible; and that his reputation for paying bills or claims was so low as not to be worthy of mention in said Directory. That said 1929 Edition of said Martindale's American Law Directory with the name of Plaintiff listed therein and his "rating" marked only by blank spaces as aforesaid, was thereupon printed, published, sold for profit and generally distributed by Defendant among lawyers and the business public generally of the United States and Canada under the system and practice of said Defendant as hereinbefore set forth.

"And plaintiff further alleges, that the publication of his name with its attached markings in said 1929 Edition of said Martindale's American Law Directory was wholly untrue and false and was so printed and published by defendant with the willful, wrongful, malicious and libellous purpose and intent of defaming, derogating, and vitally injuring Plaintiff in his professional character, reputation and business, without any justifiable reason or excuse therefor. That as matters of fact, at the time of said publication in the 1929 Edition of said Directory, Plaintiff was justly entitled to be "rated" according to the system adopted by Defendant, in legal ability as "a;" in recommendations as "v;" in estimated worth as "5" and in promptness in paying bills as "g." That by reason of the printing and insertion by Defendant in said 1929 Edition of Martindale's American Law Directory of said false, malicious, libellous and defamatory marking against his name and the publication of said volume by Defendant and the wide circulation and distribution of the same throughout the United States and

Canada, Plaintiff has been libelled, defamed, minimized and derogated in his professional reputation and injured in his business and practice, to his loss, injury and damage in the sum of Twenty-five hundred Dollars."

Section 4352, Compiled Laws of North Dakota for 1913, defines libel as follows: "Libel is a false and unprivileged publication by writing, printing, picture, effigy or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

The defendant attacks the complaint upon the ground that it does not set forth in haec verba the language of the libel upon which the action is based. The general rule is that in an action for libel the exact language of the defamatory publication must be set out in the complaint, and it is not sufficient to allege the publication in substance and effect. American Book Co. v. Kingdom Pub. Co. 71 Minn. 363, 73 N. W. 1089; Kirby v. Martindale, 19 S. D. 394, 103 N. W. 648, 9 Ann. Cas. 493; Durante v. Contanti, 130 Misc. 632, 224 N. Y. S. 520. A careful study of the complaint discloses that the gist of the action is set forth in paragraph ten as follows: "That in said 1929 Edition said Defendant caused the so-called "rating" in symbolic letters and figures placed opposite to the name of Plaintiff in its lists of attorneys to be discontinued; and after his name, upon its lists, inserted only the year of his birth and date of admission to the Bar and placed only four dashes or blank spaces, to wit: . . ." Other matter in the complaint dealing with the publication of prior editions, the ratings of other lawyers, and the private key, merely go to explain why the publication is defamatory. The complaint does not indicate that the plaintiff seeks damages for publication by the defendant of any matter except the insertion of his name, the year of his birth, and date of admission to the bar, followed by four dashes or blank spaces in the 1929 edition.

The reason for requiring defamatory matter to be set out in haec verba, is to place the alleged defamatory matter before the court so that its sufficiency may be determined and to advise the defendant of the exact charges which he will be called on to meet. 17 R. C. L. p. 390. Both of these purposes are met by the manner in which this

complaint sets forth the matter which is claimed to be defamatory. The allegations are much more definite than those used in Kirby v. Martindale, supra. In that case the complaint, which merely stated the "substance and effect" of the alleged libelous matter, was held demurrable.

The next point to be determined is whether the alleged defamatory matter constitutes libel per se or libel per quod. In determining whether a writing or publication is libelous per se it must be stripped of all innuendo, colloquium, and explanatory circumstances. Sweeney & Co. v. Brown, 249 Ky. 116, 60 S. W. (2d) 381; Wiley v. Oklahoma Press Pub. Co. 106 Okla. 52, 233 P. 224, 40 A.L.R. 573; Holway v. World Pub. Co. 171 Okla. 306, 44 P. (2d) 881; Lemmer v. The Tribune, 50 Mont. 559, 148 P. 338; Layne v. Tribune Co. 108 Fla. 177, 146 So. 234, 86 A.L.R. 466. In the case of Shaw Cleaners & Dyers v. Des Moines Dress Club, 215 Iowa, 1130, 245 N. W. 231, 86 A.L.R. 839, it is said "words which are libelous per se do not need an innuendo, and, conversely, words which need an innuendo are not libelous per se." In order to constitute libel per se "the nature of the writing must be such that the court can legally presume" that the plaintiff has been damaged. 18 Am. & Eng. Enc. Law, 2d ed. 916. The words and blanks above set out as the gist of the action, do not, in themselves, indicate anything derogatory of the plaintiff, nor does the portion of the private key which he quotes ascribe to these words and blanks such a meaning that we can say that as a matter of law they have a tendency to injure the plaintiff in his occupation, or that they expose him to hatred, contempt, ridicule or obloquy, or cause him to be shunned or avoided. The words and blanks for the publication of which the plaintiff seeks damage can only be considered actionable when accompanied by the explanation pleaded in the complaint. This explanation constitutes what is known as innuendo. "An innuendo in pleading is an explanation of the defendant's meaning by reference to some antecedent matter." Newell, Slander & Libel, ¶ 542, 4th ed. The defamatory matter upon which this action is based does not constitute libel per se.

The plaintiff cites the case of Bradstreet Co. v. Gill, 72 Tex. 115, 9 S. W. 753, 2 L.R.A. 405, 13 Am. St. Rep. 768; in support of the proposition that his complaint sets forth facts constituting libel per se.

In that case the court held that a demurrer to the complaint should have been sustained because the meaning of the words or libel was pleaded without setting forth the actual language of the libel, and that it was not sufficient to state the substance or meaning of the language used. The court then further considered questions raised upon the trial. The alleged libel consisted in reporting the plaintiff's standing as a merchant in blank in a credit rating publication issued by the plaintiff. It is held that there was no error in permitting witnesses in possession of the key to the defendant's reports to explain what was indicated by reporting a merchant's standing in blank, but that opinions of witnesses were inadmissible as to the effect of such rating upon the credit of the plaintiff. In connection with these points the court said: "If the rating meant that plaintiff had no credit and no capital, and such rating was false, it was libelous and actionable per se; and the jury should have been left to estimate its effect without the influence of opinions of the witnesses, however competent to judge of such matters." The plaintiff urges that the language above quoted supports his contention that the printing of blanks by the defendant in its directory in the manner alleged in the complaint, constitutes libel per se. In the Gill Case, as in this case, it became necessary to explain the blanks by pleading attendant circumstances by way of innuendo. That such defamation as here alleged is libel per se is contrary to the great weight of authority. We believe the better rule to be that which we have heretofore stated, that where the alleged libelous publication requires the pleading of innuendo to show its defamatory meaning, that such publication is not libelous per se. "Per se" means "by or of itself, in itself, intrinsically, essentially, directly." Webster's New Int. Dict. 2d ed.

The next question to be considered is whether or not the complaint contains a proper allegation of damage. Since the defamatory language is not libelous per se, general damages do not result as a matter of course from its publication. Special damages must therefore be alleged. Harriss v. Metropolis Co. 118 Fla. 825, 160 So. 205; Pollard v. Lyon, 91 U. S. 225, 23 L. ed. 308; Lemmer v. The Tribune, 50 Mont. 559, 148 P. 338, supra; Snavely v. Booth, — Del. —, 176 A. 649; Sutherland, Damages, 4th ed. § 1218. It is evident from reading the complaint that the injury for which the plaintiff seeks redress, is to his "professional reputation" and "his business and practice."

This court has said that special damages "refer to a special pecuniary loss that may have been sustained on account of the peculiar circumstances and condition of the party injured, but are not such a necessary result that they will be inferred by law from the character of the words used." Meyerle v. Pioneer Pub. Co. 45 N. D. 568, 178 N. W. 792.

In Pollard v. Lyon, 91 U. S. 225, 23 L. ed. 308, supra, the Supreme Court of the United States said, "Special damage is a term which denotes a claim for the natural and proximate consequences of a wrongful act; and it is undoubtedly true that the plaintiff in such a case may recover for defamatory words spoken of him or her by the defendant, even though the words are not in themselves actionable, if the declaration sets forth such a claim in due form, and the allegation is sustained by sufficient evidence; but the claim must be specifically set forth, in order that the defendant may be duly notified of its nature, and that the court may have the means to determine whether the alleged special damage is the natural and proximate consequence of the defamatory words alleged to have been spoken by the defendant. Haddan v. Lott, 15 C. B. 429, 139 Eng. Reprint, 484, 492.

"Whenever proof of special damage is necessary to maintain an action of slander, the claim for the same must be set forth in the declaration, and it must appear that the special damage is the natural and proximate consequence of the words spoken, else the allegation will not entitle the plaintiff to recover. Vicars v. Wilcocxs, 8 East, 3, 103 Eng. Reprint, 245; Knight v. Gibbs, 1 Ad. & El. 46, 110 Eng. Reprint, 1125; Ayre v. Craven, 2 Ad. & El. 8, 111 Eng. Reprint, 3; Roberts v. Roberts, 5 Best. & S. 389, 122 Eng. Reprint, 876, 8 Eng. Rul. Cas. 395.

"When special damage is claimed, the nature of the special loss or injury must be particularly set forth, to support such an action for words not in themselves actionable; and, if it is not, the defendant may demur. He did demur in the case last cited; and Cockburn, Ch. J., remarked that such an action is not maintainable, unless it be shown that the loss of some substantial or material advantage has resulted from the speaking of the words. Addison, Torts, 3d ed. 805; Wilby v. Elston, 8 C. B. 148, 137 Eng. Reprint, 464.

"Where the words are not in themselves actionable, because the

offence imputed involves neither moral turpitude nor subjects the offender to an infamous punishment, special damage must be alleged and proved in order to maintain the action. Hoag v. Hatch, 23 Conn. 585, 590; Andres v. Koppenheafer, 3 Serg. & R. 255, 256, 8 Am. Dec. 647; Buys v. Gillespie, 2 Johns. 115, 117, 3 Am. Dec. 404.

"In such a case, it is necessary that the declaration should set forth precisely in what way the special damage resulted from the speaking of the words. It is not sufficient to allege generally that the plaintiff has suffered special damages, or that the party has been put to great costs and expenses. Cook v. Cook, 100 Mass. 194."

In Thorner v. Samuels, 122 Misc. 139, 203 N. Y. S. 316, it was held that general allegations by the plaintiff, who was a teacher of singing, that he lost pupils and was prevented from procuring others were insufficient allegations of special damages.

In Denney v. Northwestern Credit Asso. 55 Wash. 331, 104 P. 769, 25 L.R.A.(N.S.) 1021, the court said: "When a loss of credit and business is charged, the names of the parties who have refused credit or withdrawn their custom must be set out specifically, or a state of facts alleged showing this to be impossible. If the words are not actionable per se, a direct traceable loss must be alleged. Otherwise the complaint is bad on demurrer."

In Odgers on Libel & Slander, 5th ed. p. 383, it is said: "Special damage must always be explicitly claimed and particulars given on the pleadings. It must be alleged with certainty and precision."

The allegations of injury to the plaintiff's professional reputation, business and practice contained in the complaint are general. They do not apprize the defendant of the special pecuniary loss for which the plaintiff seeks recovery, and, therefore, do not constitute sufficient allegations of special damages.

The defendant further attacks the complaint upon the ground that it does not allege that the libelous meaning ascribed to the publication was so understood by the readers thereof. The defendant's position upon this point is well taken. The alleged defamatory matter set out in the complaint, not being libelous per se, requires the pleading of innuendo to make it actionable. The purpose of this innuendo is to explain the libelous meaning of the publication which does not appear on its face. The foundation of the action rests upon injury to the

plaintiff's professional reputation, business and practice. Such injury can result only if readers ascribe to the defamatory matter the meaning set out by way of innuendo. Since the publication is not slanderous per se it cannot be presumed to be understood in a defamatory sense. Such defamatory understanding must be alleged and proved in order to entitle the plaintiff to recover. Sitts v. Daniel (Mo. App.) 284 S. W. 857; Maynard v. Fireman's Fund Ins. Co. 47 Cal. 207, Id., 34 Cal. 48, 91 Am. Dec. 672; Clarke v. Fitch, 41 Cal. 472; Baxter v. Dorrington, 13 Ariz. 140, 108 P. 459; Floyd v. Fordyce, 53 Ind. App. 449, 101 N. E. 825; Cosand v. Lee, 11 Ind. App. 511, 38 N. E. 1099; Freeman v. Sanderson, 123 Ind. 264, 24 N. E. 239; In Kluender v. Semann, 203 Iowa, 68, 212 N. W. 326, it is said, "A pleading which simply alleges an innuendo by way of alleged intendment on the part of the defendant is not sufficient, unless it further alleges that it was so understood by the hearer."

In this case, since the complaint does not allege that anyone besides the plaintiff himself, ascribed to the publication the libelous meaning set out in the complaint, it fails, in that respect, to state a cause of action.

We hold that the complaint is demurrable because of the failure to plead special damages and to allege a defamatory understanding, but since it appears that such defects may be remedied by amendment, the case is remanded to the District Court with permission to amend the complaint upon such terms as the court deems just.

BURKE, Ch. J., and CHRISTIANSON, BURR and NUESSLE, JJ., concur.

MORRIS, J. (On Rehearing). The respondent requests further consideration of his contention that the defamatory language alleged in the complaint sets out libel per se. Much of his argument is directed to the proposition that if language is susceptible to more than one interpretation one of which would be defamatory and the other not, whether the language is defamatory is a question for the jury. Springer v. Swift, 59 S. D. 208, 239 N. W. 171, 78 A.L.R. 1171. This does not mean that language which is susceptible of different interpretations, one of which is defamatory, is libelous per se. Respondent has failed

to distinguish between what constitutes libel per se and what constitutes libel per quod. A complaint showing either may set forth a good cause of action. Alleged defamatory language, when accompanied by proper innuendo, may constitute a good cause of action insofar as such language is concerned, and still not be libel per se. In this case the alleged defamatory publication, when accompanied by the innuendo pleaded in the complaint, sets forth a good cause of action insofar as the element of defamatory language is concerned, but does not constitute libel per se. The libel so pleaded is per quod, and as we have held in the original opinion, must be accompanied by allegations of defamatory understanding and special damages in order to present a cause of action.

"Words may be actionable in themselves or per se, or they may be actionable only on allegation and proof of special damage or per quod. The distinction is based on a rule of evidence. Words of both classes are actionable on the same grounds and for the same reasons. The noxious quality in both lies in the fact that they are the natural and proximate causes of pecuniary damage to those concerning whom they are maliciously uttered. The difference between them is in the matter of proof of the resulting injury. In the case of words actionable per se their injurious character is a fact of common notoriety, established by the general consent of men, and the court consequently takes judicial notice of it. They necessarily import damage and therefore in such cases general damages need not be pleaded or proved but are conclusively presumed to result, and special damage need not be shown to sustain the action. Moreover, malice is presumed as a matter of law in such cases. Words actionable only per quod are those whose injurious effect must be established by due allegation and proof." 17 R. C. L. p. 264, § 4.

The appellant asks us to further consider whether the complaint alleges defamatory language so as to comply with the rule requiring such language to be set out in haec verba. It emphasizes the fact that a part, but not all, of the confidential key is set forth. In the language of the complaint, damages are sought by the plaintiff for the publication by the defendant in its 1929 directory "of such false, malicious, libelous and defamatory markings against his name and the publication of said volume by the defendant and the wide circulation and distribution of the same throughout the United States." The plaintiff claims

to have been damaged by reason of the publication of blanks after his name and in order to explain why such publication is defamatory he pleads excerpts from the confidential key, along with other matter. Such publication is not libelous per se and not in itself defamatory, but when accompanied by the allegations pleaded by way of innuendo including the excerpts from the confidential key, it becomes actionable. The complaint complies with the rule requiring defamatory language to be set out in haec verba, but because it does not allege special damages and a defamatory understanding by those who read the publication, it fails to state a cause of action.

BURKE, Ch. J., and CHRISTIANSON, NUESSLE and BURR, JJ., concur.