[File No. 6487.]

S. E. ELLSWORTH, Respondent, v. MARTINDALE-HUBBELL
LAW DIRECTORY, Inc., a Corporation, Appellant.

(280 N. W. 879.)

Opinion filed June 11, 1938.   Rehearing denied July 13, 1938.

*Nilles, Oehlert & Nilles,* for appellant.
*Knauf & Knauf,* for respondent.

N<small>UESSLE</small>, J. This is an action for libel. It now comes here on appeal from an order overruling a demurrer to the amended complaint interposed on the ground that the same fails to state facts sufficient to constitute a cause of action.

The case has been here before. See Ellsworth v. Martindale-Hubbell Law Directory, 66 N. D. 578, 268 N. W. 400. On the former appeal an order overruling a demurrer to the complaint was reversed and the case was remanded with directions that the plaintiff be permitted to amend upon terms. He did amend, and the present appeal is from an order overruling a demurrer to the amended complaint. On the former appeal we held that the alleged defamatory matter on which the action was predicated, was actionable, but that it was not libelous per se, and that therefore the complaint was bad because it failed to plead special damages and a defamatory understanding.

On the instant appeal it is conceded that the amended complaint sufficiently pleads a defamatory understanding. But the defendant insists that the special damages are not well pleaded and so the complaint is bad on that account. The eleventh paragraph of the complaint, having to do with the averment of damages, and which is set out in full in the former opinion as the last paragraph of the complaint there quoted, as now amended, reads as follows:

"And plaintiff further alleges, that the publication of his name with its attached marking in said 1929 Edition of Martindale's American Law Directory by said Defendant, was untrue and false and was so printed and published by Defendant with the wilful, wrongful, malicious and libelous purpose and intent on the part of said Defendant, of defaming, derogating, and vitally injuring Plaintiff in his practice, character, reputation, and business, exposing him to contempt, ridicule, and obliquy, causing him to be shunned and avoided in a business way, and injuring him in his occupation, and causing prospective clients to send their business to others, without any justifiable reason or cause therefor, That as a matter of fact, at the time of said publication in the 1929 Edition of said Directory, Plaintiff was justly entitled to be rated according to the system developed by Defendant, in

legal ability as 'a'; recommendations as 'v'; in Estimated Worth as '5'; and in Promptness in paying Bills as 'g'. That by reason of the printing and insertion by Defendant in said 1929 Edition of Martindale's American Law Directory of said false and malicious, libelous and defamatory 'rating' against his name and the publication of said volume by said Defendant and the wide circulation and distribution of the same by said Defendant throughout the United States and Canada, and the understanding of the 12,000 or more attorneys, and business people who received and read said volume of said derogatory marking and meaning of the same, Plaintiff has been defamed, minimized, and derogated in his professional reputation, and injured in his business and practice in particulars as follows to wit: Certain persons whose names are unknown at this time, residing in Plaintiff's locality have spoken of and treated him in a contemptuous manner by reason of such publication, alleging of Plaintiff, 'That he has no business;' others have alleged that, 'Whatever his ability and reputation as a lawyer, he is shunned and avoided in a business way;' others have gone to clients of Plaintiff and urged them to employ another lawyer as according to the statement Plaintiff was now without influence with the Court, and was worthless for business purposes; further than this many business men, former clients of Plaintiff, since and after the publication of Plaintiff's name with the alleged 'rating' in said Directory for 1929 have withdrawn their business and replaced it elsewhere; also, certain business men of other localities who had no acquaintance with attorneys in Jamestown, or its locality, and have important business to place there, after consulting and examining said Directory for the purpose of placing said business have given Plaintiff's name no consideration whatever, and have placed the business elsewhere owing to such publication. That on account of the contempt, scorn, and obliquy, given to Plaintiff, and his name by said publication and its understanding by persons who read said Directory Plaintiff has been deprived of much valuable business proceeding from people whose names he cannot give at this time. That on account of said publication and its wide circulation Plaintiff has been brought into contempt, ridicule, and obliquy throughout the professional ranks of the Bar, in the United States and Canada, and generally among the business men in all places in which said Directory was and has been

circulated. That in the year 1928 the gross professional income of Plaintiff was $4,171.06. That in the year 1929 as one of the direct results of the libel of Plaintiff by the Defendant through such publication and the distribution of its Directory, as aforesaid, the income of Plaintiff reduced to $2,958.55. In the year 1930 for like reasons it was $3,047.20, in the year 1931 it reduced further for like reasons to $2,784.65. In the year 1932 for like reasons it was $1,704.40. That these reductions in income on Plaintiff's part were caused by reason of the said libelous statement of Defendant published and distributed against Plaintiff's name in its issue of Martindale's American Law Directory for the years of 1928, and 1929 and that Plaintiff believes and has every reason to believe and alleges amount to more than the sum of $2,500."

The sole question on this appeal is as to whether this amended paragraph sufficiently sets forth the special damages claimed to have been suffered. The defendant contends that it does not. That it fails to set out the names of the clients lost by the plaintiff because of the publication of the alleged defamatory matter, and that it does not specify particularly the origin, character, and amount of the business the plaintiff has been deprived of because of its publication.

In substance, the amended complaint alleges that the plaintiff has been engaged in the practice of law for many years; that he has always borne a good reputation as a man and as a lawyer; that he has had a substantial law business that came to him largely from forwarders through a widely spread foreign territory; that he was personally unacquainted with such forwarders; that the defendant's publication in which the alleged defamatory matter was published, was circulated generally throughout such territory and among those who forwarded business to the plaintiff; that, as a consequence of the circulation of such matter and immediately following such publication and circulation, his practice decreased in the manner and to the extent as set out in that portion of the complaint hereinbefore quoted.

In Ellsworth v. Martindale-Hubbell Law Directory, supra, we held that in actions for libel, where the defamatory matter was not libelous per se, special damages must be pleaded. This rule, however, applies not only in libel actions but in all cases where a recovery is sought for special damages. 4 Sedgw. Damages, 9th ed. § 1261. The rule is

predicated on the character of special damages which are the natural and proximate but not the necessary consequence of the wrong complained of. General damages, on the other hand, are such as naturally and necessarily result. So general damages are implied by law while special damages are not. Accordingly, the latter must be stated in order that it may appear that they are the legal, natural, and proximate, if not the necessary consequence of such wrong (Reporters' Asso. of America v. Sun Printing & Pub. Asso. 186 N. Y. 437, 79 N. E. 710) and also to give notice to the defendant and prevent surprise at the trial. Sedgw., Damages, § 1261, supra; 2 Sutherland, Damages, 4th ed. § 419; Townshend, Slander & Libel, 4th ed. § 345. In libel actions, special damages "refer to a special pecuniary loss that may have been sustained on account of the peculiar circumstances and condition of the party injured, but are not such a necessary result that they will be inferred by law from the character of the words used." Meyerle v. Pioneer Pub. Co. 45 N. D. 568, 178 N. W. 792.

While the rule with respect to the pleading of special damages is universally recognized, apparent contradictions have arisen in its application to particular states of fact. And nowhere is this application more difficult than in actions for defamation. Many cases may be found which actually or apparently sustain the defendant's contention as made in the instant case. See Shaw Cleaners & Dyers v. Des Moines Dress Club, 215 Iowa, 1130, 245 N. W. 231, 86 A.L.R. 839, and cases cited in note. An examination of these cases, however, discloses that they instance the application of a general rule to different states of fact but establish no accurate and definite standard of application. In any event, in the instant case, it seems to us that both right and reason are on the side of the plaintiff and that his amended complaint must be held sufficient. The statute declares that for every wrong there is a remedy. Comp. Laws 1913, § 7257. From the facts alleged it appears that unless the pleading be held good the plaintiff is remediless. He alleges that he had a fairly lucrative law business that came to him from foreign territory through forwarders with whom he was not and from the nature of things could not be personally acquainted; that such business came because of the personal and professional reputation and standing which he enjoyed; that because of the defamatory publication of which he complains, this reputation and

standing was disparaged in the minds of those who sent business to him and, consequently, his business fell off. From the nature of the circumstances as disclosed by the pleading the plaintiff cannot describe the particular items of business which he has lost or given the names of particular individuals who would have become his clients had it not been for the publication. But he does show a diminution of his business and of the income therefrom by pleading what that business amounted to prior to the publication and what it was after the publication, and as a result thereof. As to whether he can make proof in support of the allegations contained in his pleading is another matter with which we are not now concerned. It seems to us that what was said by Bowen, L. J., in Ratcliffe v. Evans, [1892] 2 Q. B. 524—C. A., admirably states the reasoning which is applicable in such a case. (In that case the defendant had printed and published in his newspaper that the plaintiff had given up business and that his firm had ceased to exist. The plaintiff proved his business had fallen off and that his profits had diminished since the publication of the words, but gave no specific evidence of the loss of any particular customer or order. It was held the proof made was, in the special circumstances of the case, sufficient to sustain the action.) Bowen, L. J., there said:

"The necessity of alleging and proving actual temporal loss with certainty and precision in all cases of the sort has been insisted upon for centuries (citing authorities). But it is an ancient and established rule of pleading that the question of generality of pleading must depend on the general subject matter (citing authorities). In all actions accordingly on the case where the damage actually done is the gist of the action, the character of the acts themselves which produce the damage, and the circumstances under which these acts are done, must regulate the degree of certainty and particularity with which the damage done ought to be stated and proved. As much certainty and particularity must be insisted on, both in pleading and proof of damage, as is reasonable, having regard to the circumstances and to the nature of the acts themselves by which the damage is done. To insist upon less would be to relax old and intelligible principles. To insist upon more would be the vainest pedantry. The rule to be laid down with regard to malicious falsehoods affecting property or trade is only an instance of the doctrines of good sense applicable to all that branch of actions on

the case to which the class under discussion belongs. The nature and circumstances of the publication of the falsehood may accordingly require the admission of evidence of general loss of business as the natural and direct result produced, and perhaps intended to be produced. An instructive illustration, and one by which the present appeal is really covered, is furnished by the case of Hargrave v. Le Breton, 4 Burr. 2422, 98 Eng. Reprint, 269, decided a century and a half ago. It was an example of slander of title at an auction. The allegation in the declaration was that divers persons who would have purchased at the auction left the place; but no particular persons were named. The objection that they were not specially mentioned was, as the report tells us, 'easily' answered. The answer given was that in the nature of the transaction it was impossible to specify names; that the injury complained of was in effect that the bidding at the auction had been prevented and stopped, and that everybody had gone away. It had, therefore, become impossible to tell with certainty who would have been bidders or purchasers if the auction had not been rendered abortive. This case shows, what sound judgment itself dictates, that in an action for falsehood producing damage to a man's trade, which in its very nature is intended or reasonably likely to produce, and which in the ordinary course of things does produce, a loss of business, as distinct from the loss of this or that known customer, evidence of such general decline of business is admissible. In Hargrave v. Le Breton, it was a falsehood openly promulgated at auction. In the case before us today, it is a falsehood openly disseminated through the press— probably read, and possibly acted on, by persons of whom the plaintiff never heard. To refuse with reference to such a subject matter to admit such general evidence would be to misunderstand and warp the meaning of old expressions; to depart from, and not to follow, old rules; and, in addition to all this, would involve an absolute denial of justice and of redress for the very mischief which was intended to be committed."

And in Odgers, Libel & Slander, 5th ed. at page 382, it is stated, citing Ratcliffe v. Evans, [1892] 2 Q. B. 524—C.A. supra:

"But it is not always necessary for the plaintiff to call as his witnesses those who have ceased to deal with him. He may be able to show by his account-books or otherwise, a general diminution of busi-

ness as distinct from the loss of particular known customers or promised orders. He has still to connect that diminution of business with the defendant's words. Such a connection may sometimes be established by the nature of the words themselves. Where the defendant has published a statement about the plaintiff's business, which is intended or reasonably calculated to produce, and in the ordinary course of things does produce, a general loss of business, evidence of such loss of business is admissible, and sufficient special damage to support the action, although the words are not actionable *per se,* and although no specific evidence is given at the trial of the loss of any particular customer or order by reason of such publication."

While, as we have hereinbefore stated, there are many cases that may be cited in support of the defendant's contention that the allegation as to special damages in the instant case is not sufficient, there also are many to be found, the reasoning of which sustains the sufficiency of the challenged pleading. The English cases generally do (see Bower, Actionable Defamation, pp. 36 et seq.) as also do those from many American jurisdictions. See Wright v. Coules, 4 Cal. App. 343, 87 P. 809; Weiss v. Whittemore, 28 Mich. 366; Bee Pub. Co. v. World Pub. Co. 59 Neb. 713, 82 N. W. 28; Trenton Mut. L. & F. Ins. Co. v. Perrine, 23 N. J. L. 402, 57 Am. Dec. 400; Denney v. Northwestern Credit Asso. 55 Wash. 331, 104 P. 769, 25 L.R.A.(N.S.) 1021; Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories (C. C. A. 8th) 17 F. (2d) 255, 52 A.L.R. 1187. See also McCue v. Equity Co-op. Pub. Co. 39 N. D. 190, 167 N. W. 225.

The order must be and it is affirmed.

CHRISTIANSON, Ch. J., and BURR and MORRIS, JJ., concur.

MILLER, Dist. J., I dissent. In the former opinion herein found in 66 N. D. 578, this court held that the published statement complained of was not libelous per se and that in such case plaintiff must allege special damages and a defamatory understanding of the statement. Special damages were also defined and several cases cited quoting the rule that such damages must be alleged with certainty and precision. This is the general rule.

"A petition declaring on a publication which, although not actionable

per se, causes loss to plaintiff in his business or profession must allege the particular contracts, sales, employments, customers, patients or clients as the case may be, lost by reason of the publication." 37 C. J. 38 (362).

With reference to a "defamatory understanding" it was held in such opinion that since the publication was not slanderous per se it cannot be presumed to be understood in a defamatory sense. Such understanding of the reader must be pleaded and proved.

It is alleged in the amended complaint that the readers of the statement had such an understanding, but it is also alleged that the plaintiff does not know the names of such people. If this is the case, and the plaintiff so states in his complaint, he cannot know what understanding any reader had of the rating, and his allegation to the contrary is not sufficient.

A pleading should be liberally construed, but the allegations of such pleading disclose that no cause of action exists as a matter of law, and to hold otherwise is placing the defendant in the same position he would be were the statement libelous per se, i. e., it would be presuming that certain prospective clients had read the statement, understood its defamatory character and by reason thereof refused to send him business, to his pecuniary loss.

The demurrer should be sustained.