353 So.2d 575 (1977)
BARRY COLLEGE, a Florida Corporation, Appellant,
v.
Eugene HULL, Appellee.
Eugene Hull, Appellant,
v.
BARRY COLLEGE, a Florida Corporation, Appellee.
Nos. 75-1464, 76-1905.
District Court of Appeal of Florida, Third District.
December 6, 1977.
Rehearing Denied January 16, 1978.
*576 Smathers & Thompson and Mercer K. Clarke, Miami, for Barry College.
William Huggett, Miami, for Eugene Hull.
Before HENDRY, C.J., and NATHAN and HUBBART, JJ.
NATHAN, Judge.
Barry College, the defendant, appeals a final judgment entered pursuant to a jury verdict in favor of the plaintiff, Eugene Hull, in the amount of $63,107.93. Eugene Hull and his wife, Robina, plaintiffs in the trial court, appeal the trial court's orders granting two remittiturs in the amount of $21,000.00 and $10,000.00, respectively. The two appeals are consolidated.
This is an action in breach of contract and libel and slander by Eugene Hull against Barry College over the publication of an allegedly defamatory memorandum written by the president of Barry College in which it was asserted that Hull "tendered his resignation" from his position as vice president for business affairs.
Hull was hired by Barry College as director for business affairs, and later promoted to vice president for business affairs. He was employed by Barry College from July 1, 1970, until September 21, 1973. Hull was given two consecutive one year *577 contracts from July 1, 1970, through June 30, 1972. Prior to the expiration of the last contract, he was granted a written two year contract from July 1, 1972, through June 30, 1974.
On March 23, 1973, Hull notified the president of Barry College by written memorandum that,
"It is my professional opinion that my knowledge and expertise are not being utilized. Therefore, I wish to inform you that I shall be seeking a relationship with another institution.
... please be assured that I shall consider your needs as well as Barry's prior to accepting a new professional relationship."
In mid-September, there occurred the last of several policy disagreements involving Hull and the administration. On September 21, 1973, the Board of Trustees of Barry College determined to accept Hull's "resignation" and directed the president to so inform Hull. Pursuant to that determination, a written notice was placed on the bulletin board of Barry College informing the Barry community as to Hull's change in status:
"This is to announce that Mr. Eugene Hull, Vice President for Business Affairs, having tendered his resignation several months ago makes it effective as of this date.
His responsibilities will be temporarily assumed by other staff members. An announcement of these assignments will be posted later."
It was this notice that was subsequently alleged to be the libel committed by Barry College.
Hull was informed that he would receive his salary through the end of December, 1973. However, payment of salary was terminated when Hull commenced this lawsuit on November 8, 1973. The complaint alleged breach of contract and libel and slander, and contained a count for loss of consortium by Hull's wife. Hull contended (1) that his contract was wrongfully terminated in the middle of an academic year without warning or notice; (2) that he was fired and never resigned, and the firing in this abrupt manner effectively prevented him from getting a job in the academic world because it raised insurmountable implications that he had been fired for serious misconduct; (3) that Barry College's entire course of conduct in firing him without notice in mid-academic year and publishing a false memorandum constituted a defamation which was incompatible with the proper exercise of his profession.
The case proceeded to a jury trial, culminating in a verdict in favor of Hull against Barry College with respect to the claims for breach of contract and libel. The amount of the jury verdict was $63,107.93. The jury found against Mrs. Hull on her claim for loss of consortium.
Barry College challenged the verdict by post-trial motions seeking a remittitur and/or a new trial. The trial court denied the motion for new trial but entered a remittitur of $21,000.00. As a result, Hull was awarded a judgment in the amount of $42,107.93.
Barry College subsequently filed a motion for relief from judgment on the grounds that Hull had committed perjury at trial and had otherwise misrepresented his employment status after leaving Barry College. While that motion was pending, Barry College filed a notice of appeal, and then requested that this court stay the appeal and relinquish jurisdiction to the trial court for the purpose of resolving the perjury question. After several stays of the appeal, the trial court ordered, as a result of the perjury charge, that Hull accept a further remittitur or he would grant a new trial on the issue of damages only. Hull declined to accept this remittitur and appealed the order. By order of November 8, 1976, this court resumed jurisdiction of the appeal.
Barry College contends that the trial court erred in failing to grant a directed verdict on Hull's claim for libel. Hull claims that the notice published on the bulletin board of Barry College constituted libel per se as it stated that he had resigned *578 when, in fact, he had been fired. The trial judge considered the publication to be libel per se.
Generally, a publication is libelous per se if, when considered alone without innuendo, it tends to subject one to hatred, distrust, ridicule, contempt or disgrace, or tends to injure one in his trade or profession, Adams v. News-Journal Corporation, 84 So.2d 549, 551 (Fla. 1955), or if it imputes to another conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession or office. Miami Herald Publishing Co. v. Brautigam, 127 So.2d 718, 722 (Fla.3d DCA 1961). Words which amount to libel per se import damages and malice and are actionable in and of themselves without allegations or proof of special damages. See Campbell v. Jacksonville Kennel Club, 66 So.2d 495, 497 (Fla. 1953). With written words which are actionable per se, their libelous and injurious character is a matter of common knowledge, and the court can take judicial notice thereof. Such words necessarily import damage. Therefore, in such cases, general damages need not be pleaded or proved, and special damages need not be shown to sustain the action. Moreover, malice is presumed as a matter of law. Commander v. Pedersen, 116 Fla. 148, 156 So. 337 (1934).
The record reflects that the trial judge fashioned a charge on libel per se which he gave to the jury. This charge, however, removed from the jury, the responsibility of deciding whether the notice constituted libel per se, libel per quod or no libel at all. The charge merely combined Hull's termination with his alleged inability to find employment, and, in effect, directed the jury to find libel if it found that Hull had been fired.
In our opinion, the court erred in determining that the notice of September 23, 1973, constituted libel per se. Under Florida law, false written statements may be either libel per se or libel per quod. The practical distinction between the two is that for libel per quod, actual malice and special damages must be proved. To recover damages for libel per quod, it is necessary to establish that the damages were caused by the language alleged to be libelous. Harriss v. Metropolis Co., 118 Fla. 825, 160 So. 205 (1935).
As stated in Wolfson v. Kirk, 273 So.2d 774 (Fla.4th DCA 1973), defamation (libel and slander) may be defined as the unprivileged publication of false statements which naturally and proximately result in injury to another. Malice is an essential element of the tort. In fact, without malice, either express or implied by law, no tort could result from the publication of a defamatory statement concerning another, however untrue it might be. Layne v. Tribune Co., 108 Fla. 177, 146 So. 234 (1933). The pertinent holding in Wolfson v. Kirk, supra, is that neither the court nor the jury may go beyond the four corners of the publication in determining whether or not there is libel per se.
Hull testified that he was terminated in September, 1973, and that he was unable to secure employment through the time of trial, in May, 1976. He attributed his lack of employment after termination to the timing of the termination. The court charged the jury that if the firing caused the unemployability, then that would be libel per se. In order to find that Hull was fired rather than having resigned, it was necessary to go out of the four corners of the notice. Therefore, there was no libel per se.
Further, the record reflects no evidence of damages stemming from the publication of the notice so as to give rise to an action for libel per quod. Accordingly, we are of the opinion that the trial judge erred in failing to grant a directed verdict on the count for libel. We reverse and remand with instructions to enter a directed verdict in favor of Barry College and against the plaintiff, Hull, on the libel count.
The other points raised by Barry College are without merit. The points raised by Hull in his appeal need not be discussed in view of the above opinion. The verdict and judgment in the amount of $16,107.93 for breach of Hull's employment contract is affirmed.
*579 Affirmed in part, reversed in part and remanded with directions.
HUBBART, Judge (concurring).
I concur in the judgment of the court on a ground which seems implicit in the court's opinion, namely, that the involuntary termination of the plaintiff's employment herein constituted an actionable breach of contract, but the written publication thereof stating without more that the plaintiff had resigned his employment was not defamatory and thus not actionable as libel.
The instant publication, even though charitably false as the plaintiff had in fact been involuntarily terminated, is not a defamatory publication because it did not expose the plaintiff to distrust, hatred, contempt, ridicule or obloquy; or cause the plaintiff to be avoided; or constitute an attack on the plaintiff's character which would have a tendency to injure the plaintiff in his office, occupation, business or employment, as required by the law of libel. Cooper v. Miami Herald Publishing Co., 159 Fla. 296, 31 So.2d 382, 384 (1947). The written notice on the Barry College bulletin board merely recited that the plaintiff had submitted his resignation as college vice-president for business affairs, that such resignation was now effective, and that the plaintiff's duties were being temporarily assumed by other college staff members. The notice contained no disparaging remarks which could in any way reflect on the plaintiff's character or reputation. As such, the notice cannot constitute an actionable libel. See: M.F. Patterson Dental Supply Co. v. Wadley, 401 F.2d 167 (10th Cir.1968); Hubbard v. Furman University, 76 S.C. 510, 57 S.E. 478 (1907) as discussed in Jack's Cookie Co. v. Brooks, 227 F.2d 935, 938 (4th Cir.1955); 50 Am.Jur.2d Libel and Slander §§ 116-17 (1970); Prosser on Torts 739-744 (4th ed. 1971).
Employment terminations of this variety and subsequent publications thereof are not uncommon in the business and professional worlds and cannot reasonably be interpreted as disgracing the employee or injuring his reputation without additional words of an otherwise defamatory character. No such additional words appear in this case. It is true that the employment termination herein and the timing thereof may have been injurious to the plaintiff's future employment prospects, but the injury, if any, came from the fact and timing of the termination, not the publication thereof. For such termination, the plaintiff's sole remedy was breach of contract.
Accordingly, the judgment on the libel count is subject to reversal for failure of the trial court to grant the defendant's motion for a directed verdict. The judgment on the breach of contract count, however, must be affirmed.