BERTHA OUREN, Martha Kolstad, Oline Skjonsberg, S. Willard
Moote, and Leslie E. Moote, Appellants, v. SEVAL FRISWOLD,
Executor of the Estate of L. O. Stai, Also Known as Lauritz O.
Stai, Nellie Gullickson, Anne Nolen, Edward Stai, Edna Hen-
drickson, Mortimer B. Moote and Benjamin S. Moote, Respond-
ents.

(215 N. W. 160.)

**Wills — execution of will established — no undue influence.**

1. In a proceeding brought to contest the probate of a will on the grounds,
first, of improper execution, and second of undue influence, the evidence is
examined and *held* to establish the due execution of the will; also, that it
does not tend substantially to prove that undue influence was brought to bear
upon the testator to the point where his act in executing the will could be said
not to be his free and voluntary act.

**Provisions of law.**

2. Under § 5649, Compiled Laws of 1913, a will is properly executed if it
is subscribed in the presence of the attesting witnesses or acknowledged by the
testator to them to have made by him or by his authority, the testator
at the time declaring to the attesting witnesses that the instrument is his
will and the witnesses signing in his presence and at his request.

**Appeal and error — wills — dismissing will contest, held not error.**

3. Where at the close of the plaintiffs' testimony a proceeding is dismissed
on motion of the defendants' attorney and not submitted to the jury under
chapter 133, Laws of 1921, § 7643, Supplement to the Compiled Laws of 1913,
the error, if any, is without prejudice where the evidence is such as to require
judgment for the defendants.

Opinion filed August 18, 1927.

Appeal and Error, 4 C. J. § 3005 p. 1020 n. 84.   Wills, 40 Cyc. p. 1115 n. 98:
p. 1117 n. 19; p. 1120 n. 38; p. 1123 n. 59; p. 1148 n. 69; p. 1165 n. 87; p. 1285 n. 26.

Appeal from the District Court of Griggs County, *Cole*, J.
Affirmed.

Annotation.—(1) As to effect of undue influence on validity of will, see 28 R. C.
L. 137, 138; 4 R. C. L. Supp. 1800; 5 R. C. L. Supp. 1516.

*Sad & Duffy,* for appellants.

It is proper for the trial judge to question witnesses whenever he deems necessary, but the right should be cautiously exercised, so as to avoid giving expression, directly or indirectly to any opinion on the merits of the case. State v. Hazlett, 14 N. D. 490, 105 N. W. 617; Booren v. McWilliams, 26 N. D. 558, 145 N. W. 410.

It is the peculiar and exclusive province of the jury to decide upon the credibility of witnesses; and that, in the exercise of this duty, the court will not interfere with the decision of the jury. Nor is there any distinction in this respect between civil and criminal cases. Jones, Ev. § 901.

A mere general objection is not sufficient to raise any question which could have been obviated had it been specifically pointed out. Kolka v. Jones, 6 N. D. 480, 71 N. W. 558.

A party has a right to contradict his own witness by independent witness, showing the facts to be different from those testified to by such witness. 40 Cyc. 2766.

If the witness has been false or mistaken in his testimony, he (the party calling him) may prove the truth by others. Jones, Ev. § 857; 23 C. J. 50.

Circumstances alone may sufficiently indicate undue influence on the mind of a testatrix. Ekern v. Erickson, 37 S. D. 300, 157 N. W. 1062.

Undue influence in securing the execution of a will need not be shown by direct proof, but may be established by proof of facts from which it may be rationally inferred. 6 L.R.A. 202.

Directing the jury to return a verdict of dismissal was in effect the same as if a motion had been made at the close of the evidence for a dismissal of the action. Bruffarts v. Ober, 21 N. D. 997, 188 N. W. 174; Kohlman v. Hyland, 54 N. D. 710, 210 N. W. 644.

*Benjamin Tufte,* for respondents.

Where the evidence offered as a whole is admissible in part and inadmissible in part, the court may reject the whole. Stark v. Stewardt, 33 N. D. 359, 157 N. W. 302; Taggert v. Jofrey, 75 N. H. 473, 28 L.R.A.(N.S.) 1050.

The burden is on one making an offer of proof to make it plainly so that it may not be misunderstood by the court. United Hardware Furniture Co. v. Blue, 59 Fla. 419, 35 L.R.A.(N.S.) 1038.

An offer of evidence not appearing in any way to be relevant is properly rejected. 59 W. Va. 75, 4 L.R.A.(N.S.) 132.

Undue influence must be proved, it is not presumed. 40 Cyc. 1158.

There can be no undue influence without a person incapable of protecting himself, as well as a wrongdoer to be resisted. Lothan v. Udell, 38 Mich. 238.

Where the evidence is insufficient to sustain a verdict for plaintiff, the dismissal of the action is not erroneous. Beber v. Beber, 150 N. Y. 204.

Findings of fact, conclusions of law, and a statement for the relief awarded embodied in a single document constitute a county court decision. Lemery v. Lemery, 15 N. D. 312.

BIRDZELL, Ch. J. One L. O. Stai died in November, 1926. Thereafter a document purporting to be his will, dated November 5, 1925, was admitted to probate in the county court of Griggs county. Certain heirs joined in a petition for revocation of probate and for letters of administration. The petition was dismissed and an appeal taken to the district court, where the cause was tried before the court and a jury. At the conclusion of the trial the court granted the motion of the respondents to dismiss the appeal and ordered judgment in their favor. From the judgment of dismissal and for costs, the petitioners appeal to this court. The grounds for contesting the probate of the will as they appear in the petition are that the deceased did not subscribe the will in the presence of the subscribing witnesses nor acknowledge to them that the same had been signed by him or with his authority and that they did not sign their names at the request of the deceased and in his presence; also, that the execution of the will was secured by undue influence practiced upon the deceased by the legatees, consisting in persistent and urgent solicitation that he make his will in their favor and consisting further in unjust criticism of the petitioners directed to the deceased. The evidence on the issues presented by the petition is briefly as follows: Seval Friswold, an officer in the bank where the deceased did business, and who had been a business adviser of the deceased, drew the will upon the request of the deceased. He testified that the deceased told him that he desired to give his property to his two sisters, the respondents, because while his family was sick

(the illness resulting in the death of his wife and two daughters), they had come and helped him and had taken care of them; that he had stayed with Mrs. Nolen through the winters for several years and other relatives had not done anything for him. After the conversation in regard to making the will he went to the bank and wrote it and on the day the will was executed he and one E. G. Hoel went to the place where deceased was staying, Max Wild's house. Friswold and Hoel went into the room where the deceased was lying in bed. The deceased sat up in bed; Friswold told him what he had written and explained its contents, deceased saying that was the way he wanted it. Friswold obtained a piece of board about fourteen inches square, placed it in front of the deceased on the bed, gave him an indelible pencil and told him "what to sign," and he signed the will. He was pretty weak at the time. Hoel was there and at the time he arranged to have deceased sign the will. The kitchen door stood open about twelve or fourteen feet away and Friswold called Max Wild to come, the latter being in the kitchen. This was just about the time he was signing it. Wild signed just as soon after deceased signed as he (the witness) could get the paper to him on the same board. Hoel signed and then Wild. Friswold didn't remember how far Wild had come from the kitchen before deceased signed the will but "he was coming all the time into the room." Deceased was trying to sign when Wild was called. He hadn't finished signing. Deceased asked Wild to witness his will "or words to that effect. I couldn't say the exact words. Will you witness my will or will you sign my will." Thought he said, "this is my will. I don't think he used the word that he had signed it. Of course it was signed and Max Wild was there, that is, near enough to see him sign." Witness testified "Yes, he (deceased) said, 'I signed it; will you witness my will?'" Was quite sure he said it was his will. "Yes, he told him that he signed the will and wanted him to witness it." He had to sign as a witness to his will. Hoel testified that he and Friswold went to Max Wild's place where the deceased was ill and went into the room a short time before anybody else came in. Max Wild came into the room upon being called by Friswold. "He called him before Mr. Stai signed the will." Max Wild was in the room while Stai was signing the will. "He was called before Mr. Stai signed it." Wild testified he signed

the will at Stai's request. Friswold called him and when he got into the room Stai asked him to sign his will. In response to the question as to whether he had seen Stai sign, he said, "Well I didn't just exactly see it. Some transactions that were brought there, you see, left my mind, so I don't remember it just right." Friswold had the will when he (Wild) came into the room. On being asked whether the will was handed to him (Wild) immediately after he came into the room, he said "I can't remember that very close." Friswold had the will in his hand but he didn't hand it to the witness right away. They read the will to him (Wild) before he signed it. It was handed around to different ones. He thought the kitchen door was shut when he was called but didn't remember whether it was open or shut. Stai heard the reading of the will. Witness signed it after it was read to him. He is sure that it was read to him by Friswold. Didn't know whether he was the last one to sign it. Didn't remember. Didn't remember what they had done with it. "I kind of lost track of it." Didn't remember whether Stai had asked him to sign the will. They handed him the board and he thought he signed the will on the table. He was sixty-three years of age and testified that his memory was failing quite a bit. After he got into the room Mr. Stai asked him first whether he wouldn't sign his will. Friswold, upon being recalled, testified that the will was read but once. He didn't read it separately to Mr. Wild. He read the will to Stai and Wild must have been near enough to hear it.

On the issue of undue influence the record shows that Mrs. Ouren, one of the heirs, and a sister of the deceased, was called as a witness on her own behalf. The deceased visited her for the last time in July, 1925, staying one week. He was sickly at the time. She next saw him at the hospital in Cooperstown (this was Max Wild's place) shortly after he was taken there. She realized that something had happened. Mrs. Nolen and Mrs. Gullickson, the respondents, were there. Objection was sustained to a question as to whether or not the change spoken of related to his friendliness or unfriendliness to the witness; also, as to whether the witness had found out that something had been said to the deceased in regard to her or her folks which caused him to take offense at her. She couldn't say how many times she talked with the deceased while he was at the hospital. Objection was sus-

tained to a question as to who was there all the time with the deceased when she (the witness) went to the hospital. She had no talk with the deceased when he was in the hospital. Objection was sustained to a question as to why she had no talk with him. Petitioners and appellants offered to prove that the witness attempted to converse with the deceased but that Mrs. Gullickson and Mrs. Nolen were present and prevented her from having any conversation with him and further that the witness had learned that parties had gone to deceased with stories that caused him to feel offended towards her and that she had desired to explain these matters to the deceased but was unable to do so on account of Mrs. Gullickson and Mrs. Nolen. The court indicated that the petitioners might prove that they had been prevented from seeing or speaking to the deceased at the hospital if such were the fact. The witness testified that Mrs. Gullickson was there so that she couldn't speak with the deceased alone. The deceased told her something and Mrs. Gullickson came in and said "shut up." She had no opportunity to talk with the deceased alone. There was no offer to prove what had been said to the deceased that would tend to influence him adverse- ly to the contestants, nor who had said it. All of the testimony above abstracted was offered by the contestants. The defendants and re- spondents introduced no evidence upon the trial.

On this record we are convinced that the evidence would not sup- port a finding that the will was not executed in the manner required by § 5649, Comp. Laws 1913, which reads: "The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them to have been made by him or by his authority" and provides that the testator "must at the time of subscribing or acknowledging the same declare to the attesting witnesses that the in- strument is his will" and that they must sign "at the testator's request and in his presence."

We are also of the opinion that the evidence, both that which was received and that which was offered and excluded, does not tend substantially to prove that at the time of the execution of the will the testator was under the domination or influence of the respondents to the point where his act in executing the document could be said not to be his free and voluntary act. It is not enough that the evidence might tend to prove that the deceased had been unjustly prejudiced

against the petitioners or that circumstances account for an unequal distribution of the affections of the deceased towards relatives of the same degree; it must appear that his volition was interfered with. 1 Underhill, Wills, § 125.

Error is also predicated upon the action of the trial court in dismissing the proceeding upon the motion of the defendants' attorney. It is contended that, under the statute, chapter 133, Laws of 1921, § 7643, Supplement to the Compiled Laws of 1913, it was the duty of the court to deny the motion and submit the issues to the jury. We are of the opinion that the error, if any, was without prejudice (Rattie v. Minneapolis, St. P. & S. Ste. M. R. Co. post, 686, 215 N. W. 158, decided at the present term) and that we would not be warranted in ordering another trial, which could but result in a judgment for the defendants.

Judgment affirmed.

BURR, CHRISTIANSON, NUESSLE, and BURKE, JJ., concur.