[File No. 6600.]

S. E. ELLSWORTH, Appellant, v. MARTINDALE-HUBBELL LAW DIRECTORY, Inc., a Corporation, Respondent.

(289 N. W. 101.)

Opinion filed December 13, 1939.  Rehearing denied December 30, 1939.

612

*Knauf & Knauf* and *S. E. Ellsworth* in pro. per., for appellant.

*Nilles, Oehlert & Nilles,* for respondent.

MORRIS, J. This is an action for libel. Upon a former appeal (66 N. D. 578, 268 N. W. 400) involving a demurrer to the complaint, we held that the matter alleged to be defamatory did not constitute libel per se, but that the complaint did allege a libel per quod, and sufficiently set forth facts constituting a defamatory publication. We further held that general damages do not result as a matter of course from the publication of defamatory matter that is not libelous per se and that the complaint was demurrable for failure to allege special damages. We also held that the complaint was demurrable for failure to allege a defamatory understanding. The case was remanded to the district court with permission to amend. The plaintiff amended his complaint to which the defendant again demurred. From the order overruling this demurrer the defendant appealed to this court. In 68 N. D. 425, 280 N. W. 879, we passed upon the sufficiency of the amended complaint with respect to the pleading of special damages. We held that special damages were sufficiently pleaded and stated the law to be that where damages are claimed on account of a general diminution of professional business and income resulting from the publication, it is sufficient, where it appears impossible to be more specific, to plead what the business amounted to prior to publication and what it was after publication, and that such diminution resulted from the publication. The case went back to the district court for trial. At the close of the testimony the defendant moved for a directed verdict. In stating the grounds for this motion the defendant contended that no defamatory matter or special damages were proved in connection with the publication. The court granted the motion and directed a verdict for the

defendant over the resistance and objection of the plaintiff. The plaintiff contends that chapter 245, N. D. Session Laws 1935, forbids the granting of such motion and that the granting thereof is, therefore, error which prejudiced the plaintiff and that the plaintiff is entitled to a new trial. The defendant contends that the statute does not prohibit the granting of a motion for a directed verdict in all cases tried to a jury regardless of the evidence, and that even if the court's action in directing a verdict be considered as erroneous the error is without prejudice because the testimony shows that as a matter of law the defendant must prevail.

That portion of chapter 245, N. D. Session Laws 1935, involved here, reads as follows: "When at the close of the testimony any party to the action moves the court to direct a verdict in his favor, and the adverse party objects thereto, such motion shall be denied and the court shall submit to the jury such issue or issues, within the pleadings on which any evidence has been taken, as either or any party to the action shall request, but upon subsequent motion, by such moving party after verdict rendered in such action, that judgment be entered notwithstanding the verdict, or if the jury have failed to agree upon a verdict, for a directed verdict, the court shall grant the same if, upon the evidence as it stood at the time such motion to direct a verdict was made, the moving party was entitled to such directed verdict."

The portion of the statute above quoted was originally enacted as a part of chapter 133, N. D. Session Laws 1921. This statute has been referred to in First Nat. Bank v. Strauss, 50 N. D. 71, 194 N. W. 900; McLeod v. Simon, 51 N. D. 533, 200 N. W. 790; Rokusek v. National Union F. Ins. Co. 50 N. D. 123, 195 N. W. 300; Thoreson v. Hector, 54 N. D. 651, 210 N. W. 169. In McLeod v. Simon, 51 N. D. 533, 200 N. W. 790, supra, this court said, "The plain purpose of this statute is to defer a ruling by the court on the sufficiency of the evidence until after a verdict has been returned. To attain that purpose it is the duty of the court to submit the cause to the jury on such of the various theories presented by the pleadings and on which any evidence has been offered as shall be requested by any party to the action. . . ."

Under the statute and authorities above cited it was the duty of the court to deny the motion for directed verdict and submit the case to the

jury. Failure so to do constituted error. However, every error of the trial court is not prejudicial error upon which a reversal can be predicated. Burdick v. Haggart, 4 Dak. 13, 22 N. W. 589; Bostwick v. Minneapolis & P. R. Co. 2 N. D. 440, 51 N. W. 781; Kelly & Mc-Laughlin v. Pierce & Champine, 16 N. D. 234, 112 N. W. 995, 12 L.R.A.(N.S.) 180; Bristol & S. Co. v. Skapple & Montgomery, 17 N. D. 271, 115 N. W. 841; McGregor v. Harm, 19 N. D. 599, 125 N. W. 885, 30 L.R.A.(N.S.) 649; Willoughby v. Smith, 26 N. D. 209, 144 N. W. 79; Carr v. Neva, 38 N. D. 158, 164 N. W. 729.

In 5 C. J. S. 810, it is said, "The existence of prejudicial error must appear from the record, the test as to whether error will be presumed prejudicial or harmless or must be proved so being whether it was such as had any reasonable tendency to influence the final result, which sometimes depends on the intrinsic character of the error and sometimes upon all the circumstances of the particular case disclosed by the record and by legitimate inference therefrom."

In this case the error consists of a violation of a statute forbidding the direction of a verdict. It may be said that prejudice will be presumed from such error and that the party against whom the error is committed need not show that he was, in fact, injured. The presumption of injury, however, is not conclusive. The effect of the presumption of prejudice is to place the burden on the party in whose favor the error might tend to operate to show that the other party was not, in fact, injured by such error. McPherrin v. Jones, 5 N. D. 261, 65 N. W. 685. The ultimate question is still the effect of the error on the rights of the party against whom it was committed. If he is not injured he is not prejudiced, and these proceedings should not be prolonged through another trial which could not bring about a different result. In Thoreson v. Hector, 54 N. D. 651, 210 N. W. 169, supra, the trial court directed a verdict for the plaintiff over the defendant's objection. There was no evidence on which a verdict for the defendant could have been based. In considering whether the error arising upon the direction of the verdict contrary to statute constituted prejudicial error, this court said, "Chapter 133, Session Laws, 1921, required the court, when objection is made to granting a motion for a directed verdict, to 'submit to the jury such issue or issues, within the pleadings on which any evidence has been taken.' In other words, the

law contemplates an issue of fact. If there be no issue of fact, there is nothing that can be submitted. Certainly, it cannot be reversible error to do in advance that which must inevitably be done after an erroneous verdict, namely: to order the only judgment which can be entered in view of the evidence."

In Rattie v. Minneapolis, St. P. & S. Ste. M. R. Co. 55 N. D. 686, 215 N. W. 158, the trial court granted a motion to dismiss the case at the close of plaintiff's testimony. The dismissal was assigned as error. In disposing of the assignment the court said, "Since the plaintiff's evidence shows affirmatively that he has no cause of action, the granting of defendant's motion to dismiss, and, the entry of judgment on the merits thereon, a practice not to be approved under chapter 133, Session Laws 1921, if error, was error without prejudice and will not be disturbed on appeal."

The Rattie Case was followed in Ouren v. Friswold, 55 N. D. 664, 215 N. W. 160.

In order to determine whether the error of the court in directing a verdict in this case was prejudicial, we will examine the whole record to ascertain whether the defendant is entitled to a judgment as a matter of law upon the merits. If such is the case the plaintiff lost nothing by the directed verdict and was not prejudiced thereby. We have the entire record before us.

The first question is whether the evidence shows the publication of defamatory matter amounting to libel. In Ellsworth v. Martindale-Hubbell Law Directory, 66 N. D. 578, 268 N. W. 400, we held that the complaint sufficiently alleged a defamatory publication. The burden of proof upon this point is upon the plaintiff. We will examine the evidence to determine whether it is sufficient to prove a defamatory publication within the purview of the statute on libel.

Section 4352, Compiled Laws 1913, defines libel as follows: "Libel is a false and unprivileged publication by writing, printing, picture, effigy or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

In Streeter v. Emmons County Farmers Press, 57 N. D. 438, 222 N. W. 455, it is said, "Fair and reasonable comment and criticism

made in good faith reasonably deducible from facts stated proven or admitted is immune from civil liability."

The plaintiff seeks to recover damages for the printing and publishing of two publications by the defendant. The first deals with the publication of the plaintiff's name and rating in the 1928 edition of Martindale's Law Directory, wherein the plaintiff was given the rating " '62 '93 b w 5 f." The figures '62 represent the year of plaintiff's birth and the figures '93 the year of his admission to the practice of the law. Of these figures he makes no complaint. He does complain that the publication of the other characters following his name are derogatory, defamatory, and have a tendency to injure him in his occupation. These figures, as we previously held, clearly are not libelous per se. We cannot legally presume that the printing of plaintiff's name in the defendant's book together with the characters caused plaintiff damage. In order to explain the meaning of the characters the plaintiff introduced in evidence a sheet of paper attached to the fly leaf of the book, known as a "Confidential Key" which explains the rating characters. The material portion thereof is as follows:

"Estimate of Legal Ability

"NOTE—No arbitrary rule for determining legal ability can be formulated. Ratings are based upon the standard of ability for the place where the lawyer practices. Age, practical experience, class of practice, with other necessary qualifications are considered; reports are obtained through various channels and we endeavor to reflect the consensus of reliable opinion.

"To qualify for 'a,' lawyers must be reported 'very high' and have been practicing not less than eight to ten years (ten years in large cities). To qualify for 'b,' lawyers must be reported 'high' and have been practicing not less than five years. A lawyer reported 'very high' and in practice more than five years but not long enough to qualify for 'a' is rated 'b.'

" 'a,' very high; 'b,' high; 'c,' fair; 'd,' medium; 'e,' we decline to rate.

"Recommendations

"NOTE—Nothing derogatory to moral character should be inferred from these ratings without special information to that effect.

" 'v,' very high; 'w,' high; 'x,' fair; 'y,' medium; 'z,' we decline to rate.

"Estimated Worth

"NOTE—It is often difficult to get reliable estimates, therefore the ratings given must be considered as being conservative approximations only.

| 1 | estimated | over | $100,000 | | | | | |
|---|-----------|------|----------|----|----------|---|------------------|
| 2 | " | from | 50,000 | to | $100,000 | 9 | less than $1,000 |
| 3 | " | " | 30,000 | to | 50,000 | | |
| 4 | " | " | 20,000 | to | 30,000 | | |
| 5 | " | " | 10,000 | to | 20,000 | | |
| 6 | " | " | 5,000 | to | 10,000 | | |
| 7 | " | " | 2,000 | to | 5,000 | | |
| 8 | " | " | 1,000 | to | 2,000 | | |

"Rating for Promptness in Paying Bills

" 'g,' good; 'f,' fair; 'm,' medium.

"NOTE—Absence of rating characters should not be construed as being derogatory to anyone without special information to that effect: This may mean that we had 'no report' or satisfactory data was not obtainable up to time of going to press: Also, in some cities we do not undertake to publish complete ratings or to rate all who are worthy."

This key is an integral part of the publication of which the plaintiff complains. He refers to it in his complaint but does not set it forth in full. It is an indispensable part of the lawsuit. There being no other evidence to indicate a meaning of the rating characters other than that given by the key, the plaintiff is bound by its interpretation of these characters.

"In determining the actionable quality of words claimed to be libelous, the entire writing, including the title or headlines, must be considered. 18 Am. & Eng. Enc. Law, 985; 25 Cyc. 357. And particular words or phrases must be construed in connection with remainder of the article of which they form a part." McCue v. Equity Co-op. Pub. Co. 39 N. D. 190, 167 N. W. 225.

This statement of the law is sustained by the following authorities. 17 R. C. L. 407; Wing v. Wing, 66 Me. 62, 22 Am. Rep. 548; Putnam v. Browne, 162 Wis. 524, 155 N. W. 910, Ann. Cas. 1918C, 1085.

We will now proceed to consider the various characters constituting the rating of the plaintiff as interpreted by the key in order to determine whether there is evidence in the record from which a jury might determine the characters to be defamatory. The first character is "b." It is an estimate of legal ability. As applied to the plaintiff it means that he is of "high" legal ability. There is only one other rating that connotes greater ability in the legal profession. That is "a," being very high. There are three letters of lesser dignity than "b," indicating various ratings less than "high." Clearly there is nothing inherently derogatory in the rating given the plaintiff as explained by the key. Nevertheless, he alleges in his complaint that it is defamatory and libelous. We now turn to the record to ascertain if the plaintiff has produced evidence from which a jury might find that the allegation is sustained.

A number of witnesses testified for the plaintiff as to his legal reputation and legal ability using various terms such as, "It is good." "Judge Ellsworth is a very able lawyer." "He is very skilful." "A well qualified lawyer." "A tenacious trial lawyer." "A first class lawyer." "He was as good as any lawyer we had in Jamestown at that time." "I think he was regarded as probably the most learned attorney that we had in the community." His ability and skill in legal matters were "very good." "Compares favorable with the better lawyers of the district." "He is a good trial lawyer." "I would say that his ability was good." "Compared favorably with lawyers of this vicinity." "The general opinion was he was a pretty good lawyer." He had a reputation "of being an excellent lawyer and among the good lawyers of Jamestown." "As good as the best." The plaintiff, who was described by his own witnesses as above, asserts that a reference to his ability as "high" on the part of the defendant constituted defamation and injured him in his business. These witnesses do not all agree that his ability is "very high." To say that he is "high" in ability is about the equivalent of saying he is a good lawyer. He complains that several lawyers in Jamestown were rated as "very high" when he was rated as only "high." There is no showing that these lawyers were not of exceptional ability. Clearly a defamation of A is not proved by showing that someone says B is a better lawyer than A, when the legal ability of B is not shown.

The next character contained in the recommendation is that of "w." It applies to "recommendations" and the rating again is "high." This rating is not challenged by the plaintiff's evidence and cannot be considered libelous.

The next character is "5" which, according to the key, represents an estimated worth of from $10,000 to $20,000. The plaintiff testified his net worth on January 1, 1929, was about $12,000. On the basis of his own testimony the character representing his worth is approximately true and does not constitute defamation.

The final character in plaintiff's rating in the 1928 directory is "f" and deals with promptness in paying bills. That character means "fair." According to the plaintiff's own testimony he paid his bills with "reasonable promptness." Upon cross-examination it appeared that some of plaintiff's bills remained unpaid for as long as two years. Therefore, it would appear that there is little, if any, difference between the plaintiff's use of the term "reasonable promptness" and the defendant's use of the word "fair," in connection with plaintiff's promptness in paying bills. It is apparent that no defamation can be based upon this rating under the plaintiff's own evidence.

In cases involving the construction of pleadings, it is generally held that it is for the court to determine whether the words used are libelous per se, and that if an innuendo is pleaded and there is a reasonable possibility that the ascribed libelous meaning can be given to the material alleged to be defamatory, it is for the jury to determine if the libelous meaning was intended and conveyed. York v. Cole, 190 Wis. 179, 208 N. W. 944; Cleary v. Webster, 170 Minn. 420, 212 N. W. 898; Oates v. Wachovia Bank & T. Co. 205 N. C. 14, 169 S. E. 869; Flake v. Greensboro News Co. 212 N. C. 780, 195 S. E. 55; Kluender v. Semann, 203 Iowa, 68, 212 N. W. 326; Brinkley v. Fishbein, 134 Kan. 833, 8 P. (2d) 318.

"Where, therefore, an innuendo is necessary in a complaint for libel the question whether the matters therein alleged are fairly warranted by the writing in question is one of law for the court to determine rather than one of fact to be left to the jury. If, therefore, at the close of plaintiff's case the court should determine that the innuendo is not warranted by the writing, the cause should not go to the jury." Ousdal v. Sansum, 86 Cal. App. 119, 260 P. 322.

In this case the plaintiff having pleaded an innuendo, the burden was on him to present evidence tending to prove this allegation. He has failed as to this feature of his proof. The question of whether the plaintiff has failed to support the innuendo by any proof whatever is for the court. It is only when evidence either directly or circumstantially supports the innuendo that a question of fact with reference thereto is presented. The evidence with respect to the 1928 directory being insufficient to support the innuendo pleaded in the complaint and the words and figures not being libelous per se, the plaintiff has failed to prove a case of libel with respect to this publication.

The plaintiff alleges that he suffered defamation by the publication of the defendant's 1929 directory in which his name was listed followed by these characters, " '62 '93 .............," which publication he alleges injured his business and practice by causing a diminution thereof in certain amounts set forth in the complaint. The 1929 directory contained the same confidential key that appeared in the 1928 volume. The publication consists of both the rating and the key. Both were introduced in evidence by the plaintiff. The last paragraph of the key consists of a note which says, "Absence of rating characters should not be construed as being derogatory to anyone without special information to that effect: This may mean that we had 'no report' or satisfactory data was not obtainable up to time of going to press: Also, in some cities we do not undertake to publish complete ratings or to rate all who are worthy."

The explanation furnished by this note is not questioned in any of the plaintiff's evidence and he does not claim that special information concerning him was furnished to anyone. The only defamatory material claimed to have been published is the four blanks. As we previously held these blanks were not libelous per se. The only explanation of them to be found in the evidence is contained in that part of the confidential key quoted above. This explanation not only fails to establish the plaintiff's claim of defamation with reference to these characters, but tends to establish affirmatively that their publication was not defamatory. The plaintiff has failed to produce any evidence tending to show that a publication of the 1929 edition of the directory was libelous.

In the former opinion of this court, published in 66 N. D. 578, 268

N. W. 400, we held that since the publication of which plaintiff complains is not libelous per se, it cannot be presumed to be understood in a defamatory sense and that a defamatory understanding must be alleged and proved in order to entitle the plaintiff to recover. The complaint was amended so as to plead such an understanding. We have carefully searched the record for evidence either direct or circumstantial which might sustain this allegation. We find none with respect to either the 1928 or the 1929 publication. The plaintiff has wholly failed to produce any evidence tending to substantiate this important element of his case. We are dealing with the publication of characters which are on their face innocent of causing damage to the plaintiff. If the publication of these characters injured the plaintiff, it must be because of the circumstances, subject matter, and context connected with their publication which resulted in a defamatory understanding on the part of a reader or readers. No evidence tending to show such understanding was produced.

The plaintiff has proved a diminution of his business after the publication of the 1928 directory. This evidence was competent under the law as set forth in our opinion in this case found in 68 N. D. 425, 280 N. W. 879. The plaintiff has produced no evidence tending to show that the decrease in the volume of his business was the result of the publication. Such evidence is necessary to a proof of damages based upon loss of business. The characters themselves are not such that we will presume that their publication caused the volume of plaintiff's business to decrease. It cannot be left entirely to conjecture. Schaffhauser Bros. v. Hemmer, 152 Iowa, 200, 131 N. W. 6; German Sav. Bank v. Fritz, 135 Iowa, 44, 109 N. W. 1008; Thompson v. Butler, 223 Iowa, 1085, 274 N. W. 110.

The record is such that had the trial court denied the defendant's motion for a directed verdict instead of granting it, as he did, and had the jury found for the plaintiff, the defendant would have been entitled to prevail upon a motion for judgment notwithstanding the verdict. Under these circumstances although the trial court erred in directing the verdict contrary to the statutory mandate, such direction resulted in no prejudice to the plaintiff because the judgment that was

entered is the same that would have ultimately resulted had the statute been followed.

Affirmed.

NUESSLE, Ch. J., and BURKE and CHRISTIANSON, JJ., concur.

BURR, J. (dissenting). I am of the opinion that in determining whether it is reversible error for the trial court to grant the motion for directed verdict, we should not consider the question of the quality of the evidence at the time the motion was granted.

There has been a progressive attitude on the part of the court to view a violation of this statute involved as not reversible error if the court be satisfied as a matter of fact that the moving party would be entitled to a verdict on a motion for judgment notwithstanding the verdict.

We have always held the view and stated distinctly that it is error so to do. The cases cited in the main opinion show this.

In First Nat. Bank v. Strauss, 50 N. D. 71, 75, 77, 194 N. W. 900, 902, we state clearly and unequivocally that it is error to direct such a verdict. The greater portion of the opinion is taken up with the discussion of the effect of this law. The trial court did direct a verdict contrary to the statute and this court reversed it. It is true that a few lines at the end of the opinion show that there was evidence to go to the jury, and, therefore, we said, "upon the record as a whole we do not believe that the defendant was entitled to a judgment in his favor, as a matter of law. Defendant's motion for a directed verdict should have been denied." Thus, it may be argued this was the controlling reason for reversal.

In Rokusek v. National Union F. Ins. Co. 50 N. D. 123, 195 N. W. 300, the issue here was not involved. In McLeod v. Simon, 51 N. D. 533, 541, 200 N. W. 790, 793, we have the quotation set forth in the main opinion showing that it is error to violate the statute. When we come to the case of Thoreson v. Hector, 54 N. D. 651, 656, 210 N. W. 169, 171, the rule is laid down that although it may be error, "it cannot be reversible error to do in advance that which must inevitably be done after an erroneous verdict, namely: to order the only judgment which can be entered in view of the evidence."

, Then, in Rattie v. Minneapolis, St. P. & S. Ste. M. R. Co. 55 N. D. 686, 692, 215 N. W. 158, 160, where the rule in Thoreson v. Hector is followed without reference to the authority, we say it is a "practice not to be approved under chapter 133, Session Laws 1921. . . ." On the same day, in Ouren v. Friswold, 55 N. D. 664, 670, 215 N. W. 160, 162, we follow the Rattie Case.

A cursory consideration of the principle involved may lead to the assumption that it is useless, and even silly, for a litigant to insist that a judgment should be set aside for a violation of the statute when, as a matter of fact, the lower court, and this court on appeal, arrive at the determination that the evidence was such that but one verdict could logically be returned in any event.

But the question is deeper than this and is not to be judged by an isolated situation entirely. I believe it may be taken as an accepted fact that the legislature, in enacting the parent statute, chapter 123, Session Laws of 1921, and subsequent amendments, had in mind providing a remedy for situations which, because of the numerous cases in which they arose, proved to be extremely detrimental to the administration of justice.

Prior to the enactment of this statute many cases had arisen where the district court, in the exercise of his judicial functions, had determined there was no evidence to submit to the jury and directed a verdict accordingly, thus requiring the opposing party to appeal and, in the reversal of the trial court, obtain a new trial at great expense and great delay. Expense and delay were then and are today among the chief criticisms of the administration of justice. It is true that there were cases arising where the trial court would grant the motion and this court on appeal agree as to the status of the case; but there were so very many instances where the appellate court determined the lower court was in error in granting such motion that the legislature determined to enact the statute involved.

The statute is mandatory on the lower court. It is difficult to see how it could be made more so. It is designed to prevent the doing of those things which had so frequently resulted in delay and expense. It is not concerned with the isolated cases where the lower court and the appellate court would agree. If it were intended, or even suspected, that the district court could take the chance of violating the statute on the theory

that the appellate court would agree with him, then there would have been no reason for enacting the statute for any prudent district court would submit the matter to a jury in a doubtful case. Thus, the court would do what should be done in such cases as this, refuse to pass hastily on the proposition (for in the speed and heat of the trial there is haste) and still have a situation which he could remedy under the old system upon more mature reflection if he came to the conclusion that there was no testimony. Hence, the holding that while it is error it is not reversible error results in nullifying the statute entirely.

While the overwhelming weight of authority is that in general the courts have the power to direct a verdict, this rule was formulated before such statutes as are involved here existed. This law must be considered as affecting this general rule—not destroying it—for it "merely regulates or postpones the exercise of the power of the court." Zimmerman v. Chicago & N. W. R. Co. 129 Minn 4, 151 N. W. 412. The right of the legislature to determine how this judicial power shall be exercised is recognized. Keen v. State, 89 Fla 113, 103 So 399.

Assuming, therefore, that the legislature has power to lay down rules which the courts must follow, a matter which is not involved here and which really requires a consideration of the constitutionality of such acts, it is clear the legislature was not governed by the consideration that in some cases the views of the two courts would coincide.

The records of this court, since the enactment of this statute, show numerous instances where the trial court granted judgment notwithstanding the verdict and was reversed. True, the lower court did not violate the statute because it passed upon the motion after the verdict; but it indicates that there was then and still is a sufficient number of instances to justify the enactment of such a statute. The course of the court is determined not by what may be the possible result, but by its plain duty. If the statute is to have any validity whatever, it must be considered as a rule of conduct binding on the courts in all cases, and it is reversible error to violate it, without reference to the effect upon the specific case which may be under consideration here. The value to the great majority of litigants was to be preferred to the incidental benefit to one. The fact that in this case it may be considered there is injury to the defendant in reversing the case on this principle and requiring it to go to the expense of another trial is not controlling. The

action of a party in insisting upon a directed verdict in face of resistance from his antagonist, thus leading the court astray, is the real cause of the subsequent delay and expense accruing to him.

In the administration of human justice you cannot guard against every injury to a litigant. Viewed in its broad aspects, the legislature in enacting this statute did not have in view the cases here and there where a court might be considered to have done no real injury in violating it. Such cases are incidental. The legislature was not concerned with that phase, nor did the legislature consider that any statute or any rule to the effect that harmless error be disregarded would apply.

It is not sufficient to say that it is only in cases where a rational man would say there is no evidence that this court will hold it is error without prejudice. Who is the rational man? After all, it is a matter of opinion to a great extent, and while the opinion of the superior must necessarily control if we are going to have order and finality, nevertheless this question is not to be determined by the claim that no harm has been done to the litigants in the case at bar. The statute is a rule designed to prevent certain conduct of the courts, conduct which we said in the Rattie Case was not to be approved. Not only is it not to be approved, but it is to be condemned. The ultimate result of the holding that it is error without prejudice is to nullify the plain purpose and intent of the legislature for it leaves the situation just as it was before. In determining this question we do not get to the consideration of the evidence, nor should we become impatient because we may consider it an idle ceremony to submit the case.

The term "Harmless Error" is not determined by the ultimate result. Grant that the end is justifiable, then the means employed become the all-important question. One may be entitled to judgment, but he must get it lawfully. If not done lawfully, we are not concerned with the result. A plaintiff may not have a case, but this must be determined according to law. Short cuts are a menace to order and justice. The end does not justify the means. Hence, in deciding this appeal we never arrive at the merits and should not scan the transcript.

In Jones v. St. Paul, 130 Minn. 260, 262, 153 N. W. 516, 517, a negligence case, the trial court had directed the jury as a matter of law that the plaintiff had not exercised due care. The supreme court held this was tantamount to a directed verdict, and, therefore, among the

grounds for reversal, held that the trial court committed reversible error in directing a verdict in the face of chapter 245 of the 1913 Session Laws of Minnesota (practically the same as our statute here involved), saying, "An objection thereto was sufficiently made and attention called to the statute at the time."

While it is the general rule that the courts must disregard harmless error, such rule is not applicable in the face of such a statute as this. In Small v. Virginia R. & Power Co. 125 Va. 416, 99 S. E. 525, the trial court, in spite of the fact that the Code of Virginia provided: " ' "that in no action tried before a jury shall the trial judge give to the jury a peremptory instruction directing what verdict the jury shall render." ' " (Va. Acts, 1912), told the jury that under no circumstances in the case could there be a recovery against the defendant. Virginia had the rule that harmless error shall be disregarded. The supreme court said that despite such rule, the provisions of the statute that there should be no peremptory instruction as to what verdict should be returned controlled. The court distinguishes between the binding effect of such statute and the binding effects of statutes which require the disregard of harmless error and show that the latter statute has no effect upon the one forbidding directed verdicts. In this case cited the court goes into an extensive review of the reasons for the enactment of such a statute. It says (125 Va. 425, 99 S. E. p. 527): "The act . . . was passed for the express purpose of prohibiting the application of the doctrine of harmless error to the mandatory direction of verdicts. . . . It can hardly be doubted, therefore, that the act meant to declare that even in such cases a violation of the settled rule of practice on the subject should not be regarded as otherwise than prejudicial."

In Atkinson v. Neblett, 144 Va. 220, 132 S. E. 326, the court reviewed its attitude toward the disregard of such statutory requirement and reversed a case where the trial court gave a peremptory direction or instruction as to but one feature of the case. In this case we need not consider to what extent such a statute goes in the matter of instructions for the act of the court here directed a verdict in the entire case and did not direct the jury to find on some one question.

If, in the opinion of the court, there is no evidence upon which a recovery may be based or defense founded, the court, in its charge to the jury, tells what the party must show and may instruct the jury that

if such party has not furnished the quantum of evidence the jury should find accordingly. This is not directing a verdict. If the court specifies the legal effect of a document and charges accordingly, it is a matter of law that may be remedied by a new trial. Where the state of the evidence is such that the controversy resolves itself into a matter of law and the court in determining the question of law states the effect and so charges the jury, the charge does not amount to a directed verdict. The case is submitted to the jury and the verdict is returned. This apparently is the proper procedure, for if the jury disregards the charge, the court then would set the verdict aside and order judgment accordingly. See Inter-Ocean Casualty Co. v. Smith, 167 Va. 246, 188 S. E. 210, 213. In other words, the trial proceeds as usual. The court rules on the introduction of evidence, strikes out evidence, construes the law, charges what is necessary to prove the case and what is the effect of failure. He then submits the case even though but one verdict can be returned. The rule requiring disregard of harmless error is followed in passing upon the act of the court during the process of trial; but the submission of the case to the jury is mandatory and failure to do so is reversible error without reference to the weight or character of the evidence. There are many cases where disregard of the statutory requirement vitiates the verdict or decision without reference to the merits of the case. They are more frequent in criminal prosecutions. For instance, where the disregard of the requirement that the defendant be personally present in court during the trial was held to cover a situation where after all the evidence was in and argument made to the jury, some of the testimony was read to the jury in the absence of the defendant. We decided the case without reference to the weight of the testimony whatever. While this is based largely upon constitutional grounds, it also discusses the statutes pertaining thereto.

The statute says: "Such motion *shall be denied* and the Court shall submit to the jury such issue or issues, within the pleadings on which any evidence has been taken. . . ." The court did not do so. It violated the statute in not doing so, it nullified the intent of the legislature in not doing so, and if the legislature has any control over the court in this respect, then the action of the court in the conduct of trials must be considered reversible error without reference to the fortunes of the litigants in the case. It may be argued no "evidence has been taken"

for there is not enough, and therefore the statute does not apply; but this borders on the ingenious. The jury was selected and almost one hundred pages of testimony taken. We should not consider the quality of it. If we have been in error heretofore, now is the time to correct our position before the rule of stare decisis is invoked.

I believe that such a declaration on the part of this court will settle once and for all the action of the lower courts. It will be in harmony with what the legislature determined. It does no injury to any litigant. It carries out the purpose and theory underlying the legislation and it is a simple thing to do. No delay and no expense of any appreciable amount will be incurred by the adherence to such a rule and there will be no conflict between two co-ordinate branches of the government as to the purpose and the carrying out of the purpose.