**UNION STORAGE & TRANSFER COMPANY, a North Dakota Corporation, Plaintiff and Respondent,**

v.

**BAKER MANUFACTURING COMPANY, a Foreign Corporation, Defendant and Appellant.**

**No. 7543.**

Supreme Court of North Dakota.

April 20, 1956.

Conmy & Conmy, Fargo, for appellant.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for respondent.

SATHRE, Judge.

. The plaintiff is a domestic corporation having its place of business in the City of

Fargo, North Dakota. The defendant is a foreign corporation having its principal place of business in the State of Wisconsin. It has branch houses in cities in other states including the City of Fargo, North Dakota. The action was brought by the plaintiff to recover past due rentals from the defendant for the use and occupation of space in premises owned by the plaintiff. The complaint alleges that from August 1, 1953 to January 13, 1954, the defendant occupied warehouse space in the plaintiff's warehouse in the City of Fargo, North Dakota, as the tenant of the plaintiff and under an agreement whereby it promised to pay to the plaintiff as rental therefor $430.50 per month payable in advance. It is then alleged that the defendant has not paid the rent under said agreement for the months of August, September, October, November and December, 1953 and for 13 days of January 1954 amounting to $2,324.70 except that the defendant has been credited with the sum of $47.75 on the payment of said rent. There is no formal lease between the parties but the agreement is found in the correspondence between the parties. The defendant admits that it leased the building from the plaintiff as alleged in the complaint, but denies that there is any rent due and owing to the plaintiff. It then alleges that the plaintiff breached the terms of the lease to the damage of the defendant and interposed a counterclaim for the amount of damages alleged that it had sustained by reason of such breach.

At the close of all of the testimony when both parties had rested the plaintiff made a motion for a directed verdict for the amount alleged to be due in its complaint, and made a second motion for a directed verdict for dismissal of defendant's counterclaim. The trial court granted the motion for a directed verdict in favor of the plaintiff for the amount claimed to be due in the complaint, but denied plaintiff's motion for a directed verdict for dismissal of defendant's counterclaim and submitted the same to the jury.

The jury returned a verdict for the defendant on the counterclaim and judgment

was entered thereon on February 2, 1955. Judgment was entered in favor of the plaintiff in accordance with its motion for a directed verdict on February 7, 1955. This appeal is by the defendant from said judgment. On February 7, 1955, the plaintiff made a motion that the verdict and judgment in favor of the defendant on its counterclaim be set aside and that judgment notwithstanding the verdict be entered for the plaintiff. On April 11, 1955, the plaintiff made a motion for a new trial. Both motions were heard by the trial court on May 10, 1955 and briefs were filed by both parties. Both motions are still undetermined by the trial court.

Before argument on the merits the plaintiff presented and filed a motion in this court for remand of the case to the district court pending determination by the district court of plaintiff's motion for judgment notwithstanding the verdict and its motion for a new trial on defendant's counterclaims and that hearing on defendant's appeal herein be continued to a future date following the decision of the trial court on plaintiff's said motions. In support of its motion to remand plaintiff contends that multiple appeals will be avoided and that the whole case can be determined by the Supreme Court on one appeal.

The defendant resisted the motion to remand and argued that the plaintiff could have filed a cross-appeal from the judgment in favor of the defendant on its counterclaim and thus have all the issues disposed of on this appeal but this the plaintiff did not choose to do. Instead it made the two motions,—one for judgment notwithstanding the verdict and the other for a new trial.

As we read the testimony and the record in the instant case two separate and independent judgments were entered in the court below,—one in favor of the plaintiff on its motion for a directed verdict and one for the defendant on its counterclaim on a verdict of the jury. The two judgments are based on different causes of action. The decision on the motions pending in the trial court can have no effect on

the issues presented on this appeal. The motion to remand is therefore denied. The only issue before us on this appeal is whether upon the evidence and the record the plaintiff is entitled to a judgment on its motion for a directed verdict.

The facts in this case insofar as they apply to this appeal are substantially as follows:

On April 21, 1950, B. L. Bertel, president of the plaintiff company, wrote a letter to the defendant, plaintiff's exhibit 1, in which it described the building in which the defendant proposed to rent space for its business operation, the space available, its fitness for the use for which the defendant proposed to use it, and the general condition of the building. The letter further stated that the building would not be available until the then tenant moved out. The letter stated:

"The element of time enters into this and what we mean is do you wish to have this space for a period of one, three or five years."

Under date of May 1, 1950, plaintiff wrote R. B. Townsend, defendant's sales manager, a letter, plaintiff's exhibit 2, as follows:

"This confirms our wire to you of April 29, which reads as follows:
"One year ten cents per foot three years nine cents per foot five years eight cents per foot part basement and part first floor still another price could be quoted.

"For the less space rented and a shorter time, our price is always on a higher basis. This makes quite a difference if you can use it for a longer period. * * *

"We hope that up to now we have made this clear enough and in such manner that both the rental space and the storage space is understandable. We believe you can find these prices more in line with what your costs should be. We hope you will let us know just what your plans are and

how you expect to handle the situation here at Fargo."

On May 4, 1950 the defendant wrote the plaintiff the following letter, plaintiff's exhibit 3, as follows:

"We have your letter of the first and also one from Mr. McFarland stating that he had loooked over the space in both the basement and first floor of your building again. He tells me that there are approximately 4,600 square feet available on the first floor, in one piece, that he thinks would work out very well with our line, if we were to have the space on the back dock for our pipe.

"We have gone over the whole deal rather carefully and believe we are within reason in offering you the following proposition. We will pay you ten cents per square foot per month for this area, Mr. McFarland describes, for one year. At the end of the first year we would be in position to decide on extending the contract either two more years or four more years, making it a three- or five-year deal providing you would give us credit for the one cent per foot paid in excess of your three-year price, if we decide to hold the space for two additional years or a total of three, or credit us two cents per foot for the first year if we decide to hold the space for the five year period. In arriving at these figures I have taken into consideration the price we are paying in other locations for space comparable to yours and the overall price picture.

"I honestly believe that ten cents per square foot is rather high at this time, and that nine cents over the period of the next three years is very liberal, and eight cents over a period of the next five years in averaging it out, seems to me like a good deal for your company. It will give us a chance to operate with our own organization for a year and make a more intelligent decision as to our requirements for the future.

"If you will figure up the cost of this space at eight cents per square foot for a period of five years you will find it is a rather substantial sum and more than I care to commit our company to pay for this space until we are better organized in the North Dakota Territory. I would like to have you come to a decision on this as soon as possible because we would like to get the matter settled one way or another with the least amount of delay."

On May 10, 1950, the plaintiff wrote the defendant the following letter, plaintiff's exhibit 4:

"We refer to your letter of May 4 which you have numbered as U–22 and which uses the following as a basis:

1 year 10¢ per sq ft. per month
3 years 9¢ " " " " "
5 years 8¢ " " " " "

"Now, your interpretation, we assume is this:

"If at the end of the first year, you decide to use the space for two more years or a total of three years, then your cost shall be adjusted to 9¢ per square foot per month for the three years. If at the end of the first year you decide to use the space for four more years or a total of five years, then your cost shall be adjusted to 8¢ per square foot per month for the five years.

"We are making this as the understanding and is agreeable to us. Of course, you understand that this space will not be available until Winston and Newell Company moves out. They presently are engaged in building a building for their purposes.

"Kindly give us your acknowledgment of this letter."

On May 19, 1950, defendant wrote plaintiff, plaintiff's exhibit 5, as follows:

"We have gone over your letter of the tenth very carefully and find that it is entirely in accordance with our understanding of the deal for space in your warehouse.

"We would, therefore, like to have you continue to handle our material as you have in the past, until this space becomes available.

"We plan on getting an office girl to Fargo about June 15, as we received a letter from Mr. McFarland in which he stated that he was having office space arranged in your building and should have it ready soon after the first.

"You may either draw up a contract according to the terms of your May 10th letter or consider this letter our acceptance of the terms you outlined in your letter of May 10. We, of course, are anxious to secure this space just as soon as possible, but understand the difficulties the present tenant is undoubtedly having in their building project."

On May 22, 1950, the plaintiff wrote the defendant, plaintiff's exhibit 6, as follows:

"Your letter of the 19th received, File U–22, as to making use of space in one of our warehouses as soon as it becomes available and as outlined in our letter of May 10.

"We do not see the necessity of a lease as it has never been our custom with companies such as yours to make leases. Matters have been handled by correspondence and no confusion has ever resulted.

"We appreciate that you will have us serve you in this matter and it will be our purpose and intention to do these things for you as they should be done. The larger pieces of merchandise of course will be quite easily handled by us until the floor area becomes available to you.

"Mr. McFarland has fixed up a little office space in our building at 806–810 Northern Pacific Avenue so that he will be able to function in that manner shortly."

The foregoing correspondence, consisting of plaintiff's exhibits 1 to 6, both inclusive, constitutes the agreement upon which both parties base their claims in this action.

The rental payments upon which the parties agreed are as follows:

One year 10 cents per foot, three years 9 cents per foot and five years 8 cents per foot. If at the end of the first year the defendant should decide to occupy the leased premises for two more years or a total of three years the rental was to be adjusted to 9 cents per square foot, and if at the end of the first year the defendant should decide to occupy the premises four more years, the rentals would be adjusted to 8 cents per square foot for the five years. In its letter to plaintiff dated May 19, 1950, plaintiff's exhibit 5, defendant asked plaintiff to draw up a contract according to the terms of its letter of May 10th, plaintiff's exhibit 4, or consider defendant's letter as acceptance of plaintiff's letter of May 10th. On May 22, 1950, plaintiff wrote defendant that it did not see the necessity of a lease as it had never been the custom with companies such as defendant to make leases, and that matters had been handled by correspondence.

The defendant went into possession of the space leased January 13, 1951 and occupied same until January 13, 1954. It paid rental at the rate of 10 cents per square foot, monthly to August 1, 1953, but paid no rentals thereafter, but continued to occupy the premises until January 13, 1954. The question in issue is whether the defendant gave sufficient notice to the plaintiff that it intended to exercise its option provided for under the lease agreement to continue in possession two or four years after the first year. The plaintiff contends that defendant never accepted the offer of the plaintiff to lease the warehouse space for either a full three year term or a full five year term but continued to pay rent at 10 cents per square foot after the first year and that therefore the defendant was a statutory tenant of the premises from year to year after January 13, 1952. The defendant, however, contends that it gave plaintiff sufficient and proper notice that it had exercised the option under the agreement to occupy the premises four years in addition to the first year and therefore was entitled to adjustment of the rent at 8 cents per square foot for the entire five year period. Defendant's claim is based upon a conversation had between B. L. Bertel, President of the plaintiff corporation and R. B. Townsend, Vice President of the defendant, some time in March or April 1951. With reference to this conversation Mr. Townsend testified as follows:

"Q. I want to ask you if the Baker Manufacturing Company did decide to use the space for four more years, or a total of five years? A. Yes, we did.

"Q. When did you make this decision to use these premises for four years more? A. I came to Fargo the following spring after we moved in, after we moved in this building here.

"Q. My question was when did you decide to stay in these premises for four more years? Is your answer March or April, '51? A. Yes.

"Q. In March or April of '51, when you are talking about, you came to Fargo? A. I came to Fargo.

"Q. Did you go to see Mr. Bertel? A. I went to see Mr. Bertel.

"Q. Did you talk to him about your decision? A. Yes, I talked to him about my decision.

"Q. What did you say to Mr. Bertel about your decision? Specifically, what did you say to him? A. I told Mr. Bertel we would like a five year lease on the warehouse.

"Q. Did you or did you not tell him that you were going to stay four more years? A. We planned on staying the full time and we wanted a lease."

Mr. Bertel, President of the plaintiff corporation, denied such conversation took place between him and Townsend. On direct examination by his counsel he testified as follows:

"Q. Mr. Bertel, Mr. Townsend, on the witness stand, testified that some time during the spring of 1951, two or three months after his company had moved into your premises he came to

your office and told you that he was committing his company to stay in your premises for a period of five years. A. He did not.

"Q. He did not tell you that at all? A. He did not.

"Q. Or did he state words to that effect to you? A. Not in any way."

There is therefore a direct conflict in the testimony as to whether the defendant advised the plaintiff of its decision to lease the space in plaintiff's warehouse for four more years after the first year. The correspondence between the parties does not specify the method by which defendant was to notify the plaintiff of its decision to use the space leased for two years or four years after the first year.

On April 16, 1953, the secretary of the defendant wrote plaintiff a letter as follows, defendant's exhibit A:

"Dear Mr. Bertel:

"I have carefully reviewed your correspondence and Mr. Townsend's correspondence dating as far back as to April 21, 1950, concerning the storage area that our Fargo branch is actively doing business on. In the text of your letter of May 10, 1950, you are agreeable to the following rates:

One year    10¢ per square foot per month
Three years 9¢ per square foot per month
Five years  8¢ per square foot per month

"Since occupying your premises dating as far back as January 1951, we have utilized thru April, 121,535½ square feet and have paid you at the rate of 10¢ per square foot, or in other words $12,153.55.

"Since we are beyond a first year occupancy and have entered into the 4th month of the 3rd year of occupancy without a rate revision per square footage, I see no reason why the past 10¢ per square footage be adjusted to 9¢ per square foot commencing with May 1, 1953. Naturally this adjustment in rate will give rise to a cash credit to us of $1,215.35. I feel that our action in

this matter is justified after reading your letter of May 10, 1950.

"As for the rate applicable on January 1, 1954, I am of the opinion that our rate will be adjusted to 8¢ per square foot.

"I would appreciate your giving this letter your utmost consideration and looking forward to a continuing pleasant mutual business relationship, I remain,

"Very truly yours,
Baker Manufacturing Company
A. R. Inserra, Secretary.".

So far as the record shows the plaintiff did not reply to this letter, and on August 19, 1953, defendant's attorneys wrote plaintiff the following letter, defendant's exhibit B:

"Gentlemen:

"Mr. Vern Wagner of Baker Manufacturing Company has been in to see us and has submitted to us the Company's file with reference to rental of space from you.

"The Baker Manufacturing Company did decide at the end of the first year to use the space for four more years and so notified you. As nothing was said in the agreement about when the rent would be adjusted the Company did not raise the point until recently and we did it then because we did not like to keep on paying 10¢ per square foot when we were entitled to an 8¢ rate eventually and we figured that you, as a matter of good business, would go along with an adjustment at this time of 9¢ and then later on making the adjustment to 8¢.

"Your letter of August 13, 1953 though, indicates that you are not willing to make any adjustment of the rent but want to collect on a straight 10¢ per square foot basis.

"We will continue to pay 10¢ under protest until January 13, 1954 and will at that time insist upon an adjustment of 9¢. If you insist, we will pay 9¢ for the next two years less the amount due us on a 9¢ basis for the previous three years, but will demand an adjustment at the end of this period of 8¢ for the whole of the five year

532

period. We hope that this last mentioned adjustment can be made sooner as good business so demands.

"Please govern yourself *according*.

"Yours truly,
Conmy & Conmy"

The plaintiff refused to make any adjustment and on August 24, 1953, wrote the defendant's attorneys:

"Nevertheless, we will want to know whether or not the Baker Manufacturing Co. intends to occupy this space after January 1954. If they remain in this space for another year, the rent will be 10¢ per square foot per month, just as it has been in the past. We will make no adjustment of any kind for past rentals paid regardless of when this lease is terminated."

On September 4, 1953, defendant's attorneys wrote plaintiff as follows:

"Gentlemen:

"We sent your letter of August 24, 1953, as to the Baker Manufacturing Company.

"They and this office consider your letters as being an affirmative breach of contract on your part. Under these circumstances they will look for other space and will get out on or before January 13, 1954.

"We are advised that a considerable portion of the space upon which Baker Manufacturing Company is paying rental has not been available for their use because of construction or improvement work you are doing. We will expect an adjustment of rent to equalize this situation.

"Baker Manufacturing Company insists on an adjustment of the rent to an 8¢ per square foot basis. We are advised that the Baker Manufacturing Company has paid you as rentals to date $13,345.50. Adjusted on the basis of 8¢ per square foot for the three year period ending January 13, 1954, this rent is $12,398.40; thus we have an overpayment of $947.10. In view of your breach of the contract we respectfully request a check for $947.10 to cover this rent payment. If it is paid we will forget any other claims.

"Yours truly,
Conmy & Conmy"

The defendant continued to occupy the leased space from January 13, 1951, to January, 1954, a full period of three years. The continued occupancy by the defendant of the leased space for two years after the end of the first year was consistent with the claim of Townsend that his company had a lease of the space occupied for a period of five years. As we have pointed out the correspondence between the parties does not provide for any specific method or form of notice to be given by the defendant of its decision to occupy the premises three or five years.

Section 28-1509, 1953 Supp. NDRC 1943, provides:

"When at the close of the testimony any party to the action moves the court to direct a verdict in his favor, and the adverse party objects therto, such motion shall be denied and the court shall submit to the jury such issue or issues, within the pleadings on which any evidence has been taken, as either or any party to the action shall request."

The rule is well settled that a motion for a directed verdict is in the nature of a demurrer to the evidence, and therefore all fair inferences from the evidence must be drawn in favor of the party against whom such verdict is directed. Schantz v. Northern Pac. R. Co., 42 N.D. 377, 173 N.W. 556; Thompson v. Smith, 45 N.D. 479, 178 N.W. 430.

Under Section 28-1509, supra, it is error to grant a motion for a directed verdict where the adverse party objects thereto; but where upon the record the party in whose favor the verdict is directed is entitled to such verdict as a matter of law the error is without prejudice. This court so held in the case of Ellsworth v. Martindale-Hubbell Law Directory, 69 N.D. 610, 289 N.W. 101, 102, under Chapter 245, S.L.1935,

which contained language identical with that of Section 28–1509, supra. Paragraph 2 of the Syllabus in that case states:

"Where the trial court has directed a verdict contrary to the provisions of Chapter 245, Session Laws N.D.1935, and the whole record is before us from which it appears that a judgment in favor of the moving party must be entered notwithstanding the verdict either upon a motion therefor in the trial court or upon appeal, the party against whom the verdict is directed is not entitled to a new trial, the error in directing the verdict not being prejudicial."

■ The controlling issue in this case is whether the defendant gave sufficient notice to plaintiff of its intention to occupy the leased space for five years. Townsend testified that he informed Mr. Bertel, President of the plaintiff, in March or April 1951, that defendant had decided to lease the space for five years. Bertel denied that he received such notice.

The defendant continued in uninterrupted possession beyond the first year and until January 1954. Such continued possession would be consistent with the claim that defendant had notified plaintiff that it had decided to lease the space for five years. On April 16, 1953, the defendant wrote plaintiff requesting that an adjustment and reduction be made in the rentals in accordance with the terms specified in plaintiff's letter of May 10, 1950. The fact that such adjustment had not been demanded earlier could not be held to be an abandonment of the lease. There is no time specified in the correspondence between the parties as to when the adjustment of rentals should be made. It could be made any time during the term of the lease. Nor is there any evidence in the record that plaintiff ever notified defendant that the tenancy under the lease was from year to year. We are of the opinion that the error of the trial court in directing a verdict for the plaintiff was prejudicial, and that the record presents a disputed question of fact that should have been submitted to the jury.

The judgment is reversed and a new trial granted.

BURKE, C. J., and MORRIS, JOHNSON, and GRIMSON, JJ., concur.